HEZEKIAH HEMPHILL ET AL. v. LOUISA HOLFORD AND ANDREW D. HOLFORD.

88    293
q128  115

*Mental incompetency—Undue influence—Evidence—Laches.*

1. Where, in a case involving the mental competency of a grantor, plenty of witnesses are found to testify upon both sides of the controversy, and the opinions seem evenly balanced, courts will look to the circumstances surrounding the transaction, its fairness, the history and character of the grantor, and the probability that one in the possession of his faculties would make a transfer of his property in a given case.

2. Where, in such a case, the relation between the grantor and grantee is very largely in the nature of guardian and ward, and in view of the grantor's condition it becomes the grantee's duty to properly care for him and his property, it is the duty of the grantee to show entirely clean hands in the transaction.

3. Delay by children in instituting proceedings to test the mental competency of an aged father to execute a deed until after his death is not such laches as will bar their right to file a bill to set aside the deed after his death.

Appeal from Genesee. (Gage, J., presiding.) Argued October 9, 1891. Decided November 13, 1891.

Bill to set aside a deed because of mental incompetency and undue influence. Complainants appeal. Decree reversed, and one entered in this Court as prayed. The facts are stated in the opinion.

*Frank B. Leland,* for complainants.

*Howard & Gold,* for defendants:

1. As to what amounts to undue influence, counsel cited *Maynard v. Vinton,* 59 Mich. 139; *Schofield v. Walker,* 58 Id. 96; *Potter's Appeal,* 53 Id. 106; *Pierce v. Pierce,* 38 Id. 412.

GRANT, J.   The complainants in this case are the heirs at law of Ovid ⋅ Hemphill, deceased, and instituted this suit to set aside a deed executed by him to defendant Louisa Holford June 10, 1875.   The reasons alleged are mental incompetency of the grantor, and undue influence exercised over him by the defendants.

Ovid Hemphill was born in the year 1799, came at an early day to the township of Burton, Genesee county, and purchased the land, 160 acres, which forms the controversy in this suit.   He cleared and cultivated this farm during his active life, and at the time he gave this deed it was worth from $7,000 to $8,000.   He was a man of unusual physical and mental activity.   He took great interest in public affairs, and was several times elected to offices of local importance and trust.   He had raised a large family, and by his work and energy, aided by his family, had become the owner of property of considerable value.   He was a man of strong convictions, and up to about the year 1867 took great interest and pleasure in the management and control of his own affairs. At that time his health became poor, his shoulder was dislocated in a fall, and he had a stroke of paralysis, from which he never recovered.   All the physicians in the case testified, and it is common experience, that under this disease both the physical and mental faculties gradually grow weaker.   About this time he gave up the entire control and management of his property, and made a conveyance of it all to one Jackson, his son-in-law.   While the record leaves us much in doubt as to the circumstances surrounding the making of this deed, and the inducements for it, yet it is fair to infer that it

was made without consultation with his children, and without sufficient consideration. A friend of the family, knowing of this deed, notified one of Mr. Hemphill's children. Upon their protest he destroyed the deed. Soon after that he made a lease of his farm to his son Hezekiah and defendant Andrew D. Holford. This lease was a practical disposal of all his property during his life. The lease ran for five years, and, if he should live longer, then it was to run during the term of his natural life, if the lessees so elected. Mr. Hemphill reserved the right to sell the premises by paying to the lessees a fair and reasonable compensation for their labor and improvements and their interest in the lease. The stock upon the farm belonging to Mr. Hemphill was to be used by and for the benefit of the lessees, with one-half the increase to lessor the first year, and after that the entire increase to lessees.

It thus appears that at the age of about 68 years Mr. Hemphill virtually closed his busy and active life, and turned over the management of all his property to others. In return for this these lessees agreed to furnish suitable maintenance and medical care for Mr. Hemphill, his wife, and an incompetent son. At the end of five years Hezekiah assigned his interest in this lease to Mr. Holford. Mr. Holford continued to carry on the place under the terms of this lease until the deed in question was made. The income from the farm was ample compensation to the lessees for the consideration paid. After Hezekiah left, Mr. Ovid Hemphill and all his property were under the sole charge and control of the defendants. About a year after Hezekiah left, Mr. Hemphill made a will devising his property to his wife during her life, and making defendant Louisa the residuary legatee. Two neighbors were called in to attend to the drawing and execution of this will. A messenger

was sent for them from the house of the defendants. The witnesses came, and, after talking over the matter with Mr. Hemphill in the presence of the defendants, they retired to the house of Mr. Atherton, the witness who drew the will, and there discussed the competency of Mr. Hemphill to make a will. This was in 1873, and during that year Mr. Hemphill's wife died. His incompetent son had also died. In the year 1875 this deed was executed. These four transactions are the only ones in which we find this once strong, vigorous, and busy man engaged from 1867, when he was 68 years old, down to the time of his death; and two of these—the first and last—conveyed away the whole of his earthly possessions without any sufficient consideration. The last deed was an absolute conveyance, without any consideration expressed in the deed, except the nominal sum of $100, and without any written provision whatever for his care and maintenance.

Mr. Hemphill had had no difficulty with any of his children, and no reason appears on this record why he should have given all his property to one. He was under no more obligations to her or to her husband than to his other children. The use of the property remunerated defendants most. abundantly for all they did.

The above are the conceded facts in this case, in the light of which we must consider the testimony of the witnesses,—on the one side to his competency, and on the other to his incompetency. Nineteen witnesses were sworn by the complainants, and 23 by the defendants, upon this question. As has been frequently stated by this Court, it is unprofitable, unnecessary, and of no importance in these cases to give the evidence in detail. Two physicians testified upon each side. The other evidence came from members of the family, and, of course, deeply interested, and from neighbors who had

known Mr. Hemphill for many years, and from others who worked upon the farm for the Holfords about the time the deed was executed. These last witnesses testified to his incompetency. As is usual in these cases, plenty of witnesses are found to testify on both sides of the controversy. When this is the case, and opinions seem evenly balanced, courts will look to the circumstances surrounding the transaction, the history and character of the man, the fairness of the transaction, and the probabilities that one in the possession of his faculties would make a transfer of his property in a given case.

I cannot concur in the opinion of the learned circuit judge that the evidence on the part of the defendants makes a stronger case of competency than does the evidence on the part of the complainants of incompetency. Those who worked upon the place about the time the deed was made, and who saw most of Mr. Hemphill at that time, judged him to be incompetent. Another important fact is that during that time his competency was the subject of conversation among his children, and doubts were expressed in regard to it. Witnesses who are unimpeached on this record testified to statements made by both the defendants of his incompetency. It may be conceded that the evidence of these witnesses alone might lead fair minds to different conclusions, but when we consider the unnaturalness, the inequity, and injustice of the transaction, I think the fair preponderance of evidence is on the side of the complainants.

It is manifest that long before the execution of this deed this old man had become enfeebled in body and mind. A man of his character, habits, and vigor does not readily give up the management of his business affairs, and, still less, give away his property, rendering himself little less than a pauper. Such conduct is contrary to

common experience. It is unnatural that such a man as was Mr. Hemphill should, when in possession of his faculties, and in the knowledge that but few years of life were left him, transfer this large property to one child, and thus disinherit all his other children, and the children of a deceased daughter.

The relation between these defendants and Mr. Hemphill was very largely in the nature of guardian and ward. In his condition it became their duty to properly take care of both him and his property. Under the record in this case I think it was their duty to show entirely clean hands in this transaction. It was right that they should be amply compensated for the care taken, and they were so compensated by the use of the property. The deed was nothing more nor less than an absolute gift. They knew that this was inequitable and unjust, and it is manifest that they not only made no objection, but that they actively assisted in its accomplishment.

It is insisted that the complainants are guilty of laches, in that they waited until after the death of Mr. Hemphill before taking steps to set aside the deed. It is insisted with much vigor by defendants' counsel that defendants were entitled to have had his competency adjudicated by a direct proceeding in the probate court, when Mr. Hemphill could have been produced for examination. I do not think this such laches as should bar the complainants' remedy now. Children might well hesitate to drag an aged parent into court under such circumstances. If they prefer, they have the right to wait till the death of the parent, and then file their bill.

The decree of the court below is reversed, and decree will be entered in this Court in accordance with the prayer of the bill, with the costs of both courts.

CHAMPLIN, C. J., MORSE and MCGRATH, JJ., concurred. LONG, J., did not sit.