·RAMSDELL v. RAMSDELL.

1. DEEDS—MENTAL COMPETENCY.
  Every man, being of sound mind, and acting according to his own desire, may freely dispose of his own property, by deed or otherwise, untrammeled by the judgment or wishes of another.

2. SAME—INSANITY—LUCID INTERVAL.
  A deed by an insane person is valid if made in a lucid interval.

3. SAME—WITNESSES—OPINIONS.
  The opinion of a witness that the grantor in a deed was mentally incompetent to execute it is of no value if based on the mere fact that his mind had previously been unbalanced.

4. SAME.
  Defendant's father had been confined in insane asylums at various times prior to 1872, but from that time down to 1896 his conduct gave no indication of mental unsoundness. In the latter year he experienced a recurrence of his trouble, which continued until July, 1897, when his mind seemed to clear. In September following, while still ·apparently rational, he executed a deed of his home farm to defendant, in consideration that the latter should give up certain plans, and live thereon and provide for him. He was then 85 years of age, and had conveyed portions of his property to his other children. At the time of executing the deed he described the premises from memory, and stated to two doctors and a lawyer, who were present for the purpose of ascertaining his mental condition, that he was aware of what he was doing, and realized that defendant might turn him out of doors if he should so desire. There was nothing directly tending to show that his mind was unsettled at this particular time: but sub-.

sequently, and down to the time of his death, two years later, there were frequent recurrences of mental disturbance, with apparently rational intervals. *Held,* that the deed would not be set aside on the ground of mental incompetency.

Appeal from Ingham; Wiest, J. Submitted May 10, 1901. Decided July 19, 1901.

Bill by Newton Ramsdell against John Ramsdell and others to set aside a deed. From a decree for complainant, defendant John Ramsdell appeals. Reversed.

*Lawton T. Hemans* and *L. B. McArthur,* for complainant.

*Cahill & Wood,* for appellant.

LONG, J. The bill in this cause was filed to set aside a deed made by Ransler Ramsdell on the 22d day of September, 1897, to his son John Ramsdell, the defendant, upon the grounds of undue influence and incompetency by reason of his insanity. The defendant answered, denying that the deed was executed by reason of undue influence, and denying that the grantor, at the time of executing it, was of unsound mind. Upon these two questions issue was joined, and the cause heard upon proofs taken in open court. A decree was made setting aside the deed on the ground that, at the time of executing it, the grantor was not of sound mind. From this decree defendant appeals.

Ransler Ramsdell died August 10, 1899, aged 87 years. He had lived on the farm where he died about 50 years. Up to the age of 52 years he had been a hard-working man, had cleared up at least two farms, and had taken an active interest in public affairs in his neighborhood. In 1864 it was noticed that he was mentally unbalanced, and he was taken to the asylum at Kalamazoo in October of that year. In December his wife brought him home, but he was not recovered, and in May, 1865, was taken to an

asylum in Canandaigua, N. Y. He returned from that place alone in November of that year. Though he was not well, he kept improving, and no serious recurrence of his mental trouble was discovered until 1871. In May of that year he was adjudged insane by the probate court, and sent to the asylum at Kalamazoo, where he remained until the following October, when his wife brought him home, although not fully recovered. He continued to improve in health, and in the summer of 1872 seemed to have fully regained his mental health.

From the time of his first attack, in 1864, his manner of life, so far as engaging in public affairs, changed. He ceased to go to church or to town, never voted after that, and never personally managed his farm, but leased it to his boys. In 1872 his family consisted of John, the eldest son, Van Ransler, and Newton, and his daughter, Ella Louise, who died in 1878, leaving a daughter. In 1873, being a short time after he returned from the asylum the last time, deceased conveyed to his two sons Van Ransler and Newton 80 acres of land jointly, which they subsequently divided between them. For many years complainant leased the home farm of his father on shares, giving his father one-third and taking two-thirds. From 1872 down to the fall of 1896 there was no recurrence of any active mental trouble, and the old gentleman lived quietly at home with his wife, transacting very little business. Occasionally he bought or sold some personal property, and attended to minor affairs of his business. He also visited and received visits from the neighbors. He had always been a reader, and continued to be up to the time of his death. He had been a subscriber to the Detroit Free Press for over 50 years, which he read habitually.

During the fall of 1896, and the winter and spring down to June, 1897, there was a recurrence of his mental trouble. His wife was very ill during the winter, and died on the 7th of July, 1897. During her illness his mind seemed to be seriously affected, and continued so until about the last of June, when it cleared up so that he be-

came to all appearances perfectly quiet and rational, and so continued until after the deed was executed, on September 22, 1897, when he had another period of mental disturbance, lasting about three months, and from then on until his death these conditions of mental disorder recurred about once in three months, and lasted about three months. During the intervals he appeared to be rational, although feeble in health.

It appears that, some time prior to 1864, the deceased had deeded to defendant 78 acres of land near the home farm, but he continued to live at home until he was 29 years of age, working for his father on the home farm most of the time.   He cleared up the land his father gave him, and raised crops upon it, giving his father about $1,200 as the proceeds of wheat raised on that land.   Another piece of his land was afterwards sold for $1,200, and that money also went to his father towards the building of the house. Soon after the father returned from the asylum the last time, and in 1872, defendant moved to Kent county, and was gone three years.   In 1875 he returned at the request of his father and mother, and lived with them for five years.   During that time he and his brothers, Newton and Van Ransler, worked the farm together.   At the end of that time he went to Grand Rapids, and remained there three years, or until 1883, when his mother again wrote him to come home, and he returned.   He took a lease of the place for five years, but stayed only one year and a half, when he returned to Grand Rapids, and stayed there until called back in May, 1897, by a letter from complainant's wife, telling him of his mother's serious illness.   He came, expecting to return soon, but his mother having died on July 7th, and his father being in feeble health, he did not.   He endeavored to persuade his father to go back with him to Grand Rapids, but this his father was not willing to do, but proposed to deed him his farm of 80 acres, and have defendant remain and take care of him. This defendant at first declined to consent to, but finally did consent, upon condition that Dr. Brown, who had

been the family physician for 30 years, and Dr. Rowe and Mr. Gildart, an attorney at Stockbridge, should be called in to confer with him, and, if they made up their minds that he was competent to make the deed, he would take it. On September 22d, the three named gentlemen were called to his house for the purpose of talking with the father, and, if they deemed it advisable after such conference, a deed was to be made. At this conference defendant was not present until after the deed was executed. They testified on the trial that at that time they saw nothing to indicate that Mr. Ramsdell was not perfectly rational. He seemed to understand just what he wanted to do, and why he wanted to do it. He was able to describe the land (which consisted of two 40's, separately described) from memory. He was asked if he perfectly comprehended what the effect of his action might be, and replied in the affirmative. The deed was executed and delivered to defendant, who shortly afterwards sent to Grand Rapids for his family, and they continued to live with, and care for, the old gentleman until his death, in August, 1899.

It was not contended on the hearing in the court below that there was any proof of undue influence, but reliance was had upon the proofs tending to show that the grantor was of unsound mind.

We think the decree by the court below cannot stand. There was no direct proof offered by complainant showing an unsettled mental condition of Mr. Ramsdell on the day the deed was executed, nor for some time before that. Complainant rests his case upon the fact that Mr. Ramsdell had been insane in previous years; also some months preceding the making of the deed, as well as after its execution. The witnesses produced on the part of the complainant seem to have based their opinion as to his competency upon facts which are undisputed in the record, viz., that he had been insane. When pressed upon cross-examination to state any fact or facts as a basis for their opinions, they stated those that had occurred during the period of his admitted insanity. No facts or circum-

stances were stated by them that occurred between 1872 and 1896 that indicate an unsound mind, unless it be the fact that during those years he remained quietly at home, and refrained from taking part in public affairs. The opinion of a witness as to incompetency is of no weight unless he states facts which legitimately tend to show it. *O'Connor* v. *Madison*, 98 Mich. 183, 187 (57 N. W. 105).

Counsel for complainant claim that in its equities the case is parallel with the case of *Hemphill* v. *Holford*, 88 Mich. 293 (50 N. W. 300). We think the case does not fall within the rule there laid down. It there appeared that Mr. Hemphill transferred his large property to one child, and thus disinherited all his other children and the children of a deceased daughter. In the present case it appeared that Mr. Ramsdell had made transfers of property to his other children prior to that time. It would seem that the father relied upon this son, and wanted to have his care and protection, and desired to deed the farm to him, that the son might be recompensed for his giving up of other plans and devoting himself to this purpose.

It is a general rule that every man, being of sound mind, and acting according to his own desire, may freely dispose of his own property, by deed or otherwise, untrammeled by the judgment or wishes of another. In *Peninsular Trust Co.* v. *Barker*, 116 Mich. 333 (74 N. W. 508), it was held that one has sufficient capacity to make a will where he understands the business in which he is engaged, the extent and value of his property, knows who are his relatives, and who would be his heirs at law if no will were made; that the fact that a testator is subject to certain delusions does not invalidate his will if they do not dictate its provisions. In the present case, Mr. Ramsdell was able to describe the land (which consisted of two 40's, separately described) from memory. The two doctors, who were there for the purpose of ascertaining his mental condition, both testified on the trial that he was competent to make the deed, and this is supplemented by Mr. Gildart, the attorney, who reached the same conclusion from the interview he had with Mr. Ramsdell there

on that day.  He testified that after the parties had completed their work, and gone out of the house, he said to the two doctors: "Let us go back; I want to ask him one more question."  They returned to the house, and Mr. Gildart said: "Mr. Ramsdell, do you know what you have been doing?"  "Yes, sir," he replied, "I have been making a deed of this farm to John."  "Do you know the consequence of that?  Do you know that John might turn you out of the house tomorrow, and you would be without a home?"  Mr. Ramsdell answered: "Yes, sir, I know that; but Christiana and I raised John; we can trust him;" and one of the witnesses says he then stated, "I will have a home as long as John has a home."

As was said in the case of *Davis* v. *Phillips*, 85 Mich. 198 (48 N. W. 513):

"While weakness of mind is an important element for the consideration of the court in determining the nature of such transactions, yet weakness of mind alone is not sufficient to warrant the setting aside of a contract otherwise valid and free from any taint of fraud.  There are many degrees of competency, but business transactions are not to be measured by degrees.  The sole question always is, Had the party sufficient intelligence to understand the transaction?"

We think it apparent that Mr. Ramsdell, at the time the deed was executed, was restored in his mental faculties so far as to be able to comprehend what he was doing, what property he was disposing of, the condition of his family, and his own situation, and was able to act with memory and judgment.  It is laid down as a rule of law that a deed is good if made in a lucid interval.  25 Am. & Eng. Enc. Law, 978.  See, also, *Jones* v. *Hughes*, 15 Abb. N. C. 141, affirmed by the court of appeals in 116 N. Y. 67 (22 N. E. 446, 15 Am. St. Rep. 386); *Lewis* v. *Arbuckle*, 85 Iowa, 335 (52 N. W. 237).

The decree below must be reversed, and a decree entered here dismissing complainant's bill, with costs of both courts.

The other Justices concurred.