## STEWART ET AL. *v.* MANSHIP ET AL.

[No. 24,022.   Filed June 26, 1923.   Rehearing denied December 11, 1923.]

1.  APPEAL.—*Review.*—*Weight of Evidence.*—An appellate tribunal will not weigh conflicting evidence, nor undertake to decide which of two possible inferences arising from certain items of evidence, the jury ought to have drawn.  p. 696.

2.  WILLS.— *Contest of.*— *Unsoundness of Testator's Mind.*— *Cross-examination of Witness.*—In an action to contest a will on the ground that testator was of unsound mind, where a witness had testified as to a specific act of the deceased which might influence the jury in determining that he was of unsound mind, it was not an abuse of discretion for the court to permit the witness to be cross-examined as to what he knew about the actions of the testator at other times, and the interpretation he put upon them as indicating unsoundness of mind or otherwise, and then to give an opinion as to the testator's mental capacity.  p. 697.

3.  WILLS.—*Contest of.*—*Testator's Mental Capacity.*—*Exclusion of Evidence.*—In an action to contest a will on the ground of testator's unsoundness of mind, the exclusion of the opinions of witnesses that the testator was of sound or unsound mind during a period of 12 to 18 years, where their testimony showed that, for months and years at a time during that period, they had no associations nor communication with or observation of the testator, was proper, as the jury was as competent as the witnesses to draw the proper inference.  p. 698.

4.  WILLS.—*Contest of.*—*Nonexperts.*—*Testimony of.*—*Relevancy.* —The opinion of a nonexpert witness as to the soundness of mind of a testator should have reference to the time, or about the time, to which his testimony concerning acts and statements of the testator and his acquaintance with him related, and not to a time years before or after.  (*Swygart* v. *Willard,*

Stewart *v.* Manship—193 Ind. 694.

166 Ind. 25, 30, and *Sanger* v. *Bacon*, 180 Ind. 322, 329, distinguished.)   p. 699.

5. APPEAL.—*Review.—Instructions.—Exceptions.—Manner of.—Statute.*—In order to reserve exceptions to the refusal to give requested instructions under §561 Burns 1914, Acts 1907 p. 652, there must be a memorandum at the close of the instructions requested, signed by the judge, specifying the numbers of those he will give and those he will refuse, and, in the absence of such memorandum, such refusal will not be reviewed on appeal. p. 700.

6. WILLS.—*Contest of.—Unsoundness of Mind.—Instruction.*—In an action to contest a will because of the unsoundness of mind of the testator, an instruction that any one of certain enumerated facts would not alone constitute unsoundness of mind was not reversible error, where each statement was qualified by the statement "if such person still have testamentary capacity as elsewhere defined in these instructions" or some similar qualification.   p. 700.

From Hancock Circuit Court; *Jonas P. Walker*, Judge.

Action by Irene Stewart and others, including Harriet Deeter Sample, against Mattier Manship and others to contest a will.   From a judgment for defendants, the plaintiff Harriet Deeter Sample appeals.   *Affirmed.*

*Thomas Kane, Jackson & Hinchman, Batchelder & Batchelder* and *Major A. Downing*, for appellants.

*Eli P. Myers, Charles L. Tindall, Charles H. Cook, Joseph A. Roberts, Walter R. Fertig, Walter Shirts* and *Emmett R. Fertig*, for appellees.

EWBANK, J.—This is a second appeal (*Manship* v. *Stewart* (1914), 181 Ind. 299, 104 N. E. 505).   The appellant, Harriet Deeter Sample joined with others in bringing an action to contest the will and eleven codicils of Madison Brooks, for reasons which were finally narrowed to the single proposition that he was of unsound mind at each of the times when they were severally executed.   At the second trial, the jury returned a general verdict in favor of the defendants, and answered

interrogatories submitted by the court finding specifically that at the times when Madison Brooks executed the will and each codicil, he had "mind and memory sufficient to understand the ordinary affairs of life and to act with discretion therein", and "sufficient mind and memory to know his wife, his children and their descendants", together with their "names, their respective stations in life and the relation they had sustained to him in life", with "mind sufficient to know the deserts of his relatives with reference to their conduct and treatment of him"; that he also had, at said times, "a general knowledge of the estate he then possessed", and had "mind and memory sufficiently strong and active to know and retain therein, at such respective times, the value and extent of his property, the number and names of those who were the natural objects of his bounty, their deserts with reference to their treatment of him, and their capacities and necessities."

Each plaintiff separately filed a motion for a new trial for certain alleged reasons, and reserved an exception to the overruling of such motion. All of

1. the plaintiffs attempted to perfect an appeal, but the appeal was dismissed as to all except Harriet Deeter Sample, who assigned as error only the ruling on her motion for a new trial. There was ample evidence to sustain the verdict if the jury believed defendants' witnesses and drew from the testimony and the documents in evidence some inferences in favor of the soundness of mind of the testator which it was within their province to draw. This court does not weigh conflicting evidence, nor undertake to decide which of two possible inferences arising from certain items of evidence the jury ought to have drawn.

Appellant complains that certain witnesses called by the plaintiffs were asked on cross-examination whether,

in their opinion, Madison Brooks was a person
2. of sound or unsound mind, and were permitted
to give answers to the effect that they knew of
nothing but a single act or circumstance indicating that
he was of unsound mind, or that, in their opinion, he
was of sound mind, although neither of such witnesses
had been asked on direct examination to express an
opinion. The witness Gardner testified in chief that he
saw Madison Brooks, about a year before he died, go
behind his buggy, in the daytime, on the main street
of a town where he traded, and urinate in the street,
and had seen him do the same before down the alleys;
that this was "the time he was arrested." On cross
examination, he stated that there were no public urinals
in that town, but that there was a livery stable half a
square away. He then stated, in answer to a question,
that he knew of nothing else which indicated that
Brooks was a person of unsound mind. His testimony
in chief was competent only because of its bearing on
the question whether the testator was then of sound or
unsound mind. Evidence other than the testimony of
this witness showed that, at that time, the testator was
ninety-three years old, that he had been a farmer all
his life and had lived near that town on the same farm
for sixty-three years; that his sight was defective, and
that he had some of the physical infirmities that attend
old age. It was not an abuse of discretion to permit
cross-examination of the witness as to what he knew
about the actions of decedent at other times, and the
interpretation he put upon them as indicating unsound-
ness of mind or otherwise.

The examination in chief of each of the other wit-
nesses referred to related only to acts done and state-
ments made by the testator which were competent solely
as tending to prove his mental condition, and obviously
were offered as proof that he was of unsound mind. In

each case, the witness answered questions on cross-examination as to his acquaintance with the testator, and as to what he had heard the testator say and had seen him do, and was then permitted to give an opinion whether or not, upon all the facts stated, he was of sound or unsound mind. The court is not shown to have abused its discretion in permitting this to be done.

Appellant complains that the trial court excluded the answers to certain questions when the testimony given at the former trial by witnesses who had since

3. died was read in evidence under an agreement of the parties. The agreement stipulated that in reading such evidence "all questions propounded to them by counsel while testifying on said former trial may be read * * * the same as though said deceased witness were present and testifying * * * subject to * * * the right of any and all parties to make to the trial court any objection or motion which they desire * * * to any question or questions * * * the same as though said witnesses were living and present for the purpose of testifying." One of the questions to which an objection was sustained asked whether, in the opinion of the witness, the testator was of sound or unsound mind "from 1897 on to the time of his death", which was shown to have occurred about the first of June, 1909. The other asked the opinion of the witness to whom it was addressed, whether, in her opinion, he was of sound or unsound mind "for the last seventeen or eighteen years of his life." An objection to each question that it asked for an opinion covering all of the long period of years inquired about, while the witness had not testified that he or she met or saw or observed the decedent during all of that period, but had given testimony showing that such witness saw the testator only at irregular intervals within the period, was sustained. The testimony of each witness

showed that for months and years at a time of the period inquired about, the witness had no communication with the testator, and could know nothing of his mental condition at those times except by inference from what was observed long before and long after. The validity was in question of a will and eleven codicils, signed and witnessed in eight different calendar years, within a period of more than twelve years, with intervals varying in length from four weeks to four years between the times of signing the different instruments. If an inference of continued insanity throughout the entire time was to be drawn from the fact that the testator was found by the witness to have symptoms of unsoundness of mind at each of a number of times, separated by long intervals, when he saw and talked with him, the jury was as competent as the witness to draw such inference. *Denning* v. *Butcher* (1894), 91 Iowa 425, 59 N. W. 69; *Hull* v. *Hull* (1902), 117 Iowa 738, 89 N. W. 979; *Ramsdell* v. *Ramsdell* (1901), 128 Mich. 110, 87 N. W. 81. An opinion of a nonexpert witness as to the soundness or unsoundness of mind of the testator should have reference to the time, or

4. about the time, to which his testimony concerning the acts and statements of the testator and his acquaintance with him has related, and not to a time years before or years after he met and talked with him. *Sutherland* v. *Hankins* (1877), 56 Ind. 343, 349.

Appellant cites and relies on the cases of *Swygart* v. *Willard* (1906), 166 Ind. 25, 30, 76 N. E. 755, and *Sanger* v. *Bacon* (1913), 180 Ind. 322, 329, 101 N. E. 1001. In *Swygart* v. *Willard, supra,* an objection was overruled, and the witness was permitted to answer a question which the Supreme Court criticized as being unskillfully framed, but which it said seemed intended to elicit the opinion of the witness upon facts gathered from his acquaintance with and observation of the de-

ceased for ten years, and which the court said was sufficiently limited to the facts and appearance detailed to the jury, so that appellant was not harmed. In *Sanger* v. *Bacon, supra,* no objection was interposed to the question asked, and the Supreme Court merely held that appellant's motion to strike out the answer was not so framed as to present any question on appeal. Those cases are clearly distinguishable from the one at bar. No question is before us as to whether or not it might have been harmless error to permit the witness to answer the questions under consideration, and, as to that, we decide nothing. In view of the facts and circumstances to which each of these witnesses had testified, and the long periods when each had not seen or conversed with the testator, it was not reversible error to sustain the objections.

Appellant complains of the refusal to give certain instructions asked by the plaintiff. But there is no memorandum in writing at the close of the instructions so requested, signed by the judge, specifying the numbers of those given and those refused, as is required in order to reserve exceptions under §561 Burns 1914, Acts 1907 p. 652, and no attempt was made to reserve them in any other way. Therefore she has no available exceptions to such refusal. *Wiseman* v. *Gouldsberry* (1910), 45 Ind. App. 677, 91 N. E. 616.

Appellant complains because the jury was instructed that either of certain facts alone did not constitute unsoundness of mind. But each of these statements was qualified by the exception "if such person still have testamentary capacity as elsewhere defined in these instructions", or "unless such mental impairment has advanced to such a stage as amounts to unsoundness of mind as defined in these instructions", or something else to the like effect. And

the court gave an instruction that "weakness of intellect arising from age, disease, bodily infirmity, or from any or all of these causes, * . * * may be considered by you in determining whether or not the decedent was, at the time of the execution of the will and codicils in controversy, a person of sound or unsound mind." Without taking up separately each of the fifteen instructions complained of, it is enough to say that the record does not disclose error available to reverse the judgment.

The judgment is affirmed.