## Temperance White and another v. Alexander C. Bailey.

The relevancy of evidence depends on the issue to be tried.

Where a will which disinherits the testator's children is assailed on the ground of mental incapacity, and it appears to have been made by a feeble old man while residing with the beneficiary under it, it is competent for the propounder to prove all those facts which might have contributed to alienate the testator's parental feelings, and to create in his mind a dislike for his children. Such a state of mind would furnish a motive for giving his property to another, and tend to repel the suspicion of undue influence.

A medical witness having testified to seeing the decedent some two or three months before the making of the will, was asked "From what you saw, what was his mental capacity?" This question must be understood as referring to the mental capacity to make a will, and is incompetent, because presenting a question of law, and not of medical science. Per MANNING J., MARTIN CH. J. concurring.

Neither medical experts nor other witnesses can be allowed in any case to give an opinion upon mental capacity or condition, without first showing the circumstances and facts upon which the opinion is based.

If defendant after the plaintiff's rebutting evidence is closed, recalls one of his own witnesses to give evidence which would have been proper when the witness was on the stand before, it is discretionary with the Court to allow the evidence or not.

A surety in an appeal bond is not a party to the appeal, nor one in whose immediate and individual behalf the appeal is prosecuted; and was not therefore disqualified from testifying for the appellant under the Revised Statutes:—(Comp. L. § 4339).

The issue was submitted to a jury whether an alleged will was the last will and testament of the decedent, and whether at the time of executing it he was of sound and disposing [mind, and not under the undue influence of the devisee named therein. The jury returned a verdict that the will was the last will and testament of the decedent, and that at the time of executing it he was of sound disposing mind and memory, and capable of disposing of his property by will. *Held* that the verdict covered the whole issue, and necessarily negatived all undue influence.

*Heard January 17th. Decided May 6th.*

Error to Kent Circuit.

Alexander C. Bailey presented to the Probate Court for Kent county, for probate and allowance, an instrument purporting to be the last will and testament of Luther Mudge. On the hearing in that Court, Temperance White and Mary Blood, daughters of said Mudge, appeared and opposed, and the will was disallowed. Bailey appealed to the Circuit Court, where an issue was directed by the Court to be made up and submitted to a jury. The issue and the case will be found stated in the opinion of Justice MANNING. On the trial, considerable evidence was given on behalf of Bailey, under objection, tending to show that Mudge considered himself ill-treated by his children, and kindly treated by Bailey; that he left the house of Mrs. White and went to Bailey's to live; that White spoke of him as a dirty, filthy old dog; that in his last years he was supported as a town pauper, and White called on the public authorities for pay for keeping him while at his house, and both Mr. and Mrs. White declared they would not keep him another year. The questions arising upon evidence rejected will appear by the opinion.

*C. H. Chase* and *J. T. Holmes*, for plaintiffs in error.

*Bement & Moore*, for defendant in error.

MANNING J.:

The relevancy of evidence depends on the issue to be tried. Some cases admit of a much wider range than others. Where the motive of a person for doing an act out of the ordinary course of events is a legitimate subject of inquiry, under the issue, all the surrounding circumstances and influences that might have contributed to or caused such motive may be inquired into.

The plaintiffs in error, Mrs. White and Mrs. Blood, are children of Mudge, the testator. His only children, it is to be presumed, as no mention is made of any others.

Bailey, the defendant in error, and to whom Mudge gave all his property, was in no way related to him. The testator left White's family, in which he had been residing, and went to live with Bailey some two, three or four months, certainly not longer than four months, before his death; and while at Bailey's, and on the 18th day of August, 1858, made his will, and died in two or three days thereafter.

By direction of the Circuit Court an issue was made in that Court to determine the following facts : 1st. The domicil of Mudge at the time of his death : 2d. Whether the alleged will was his last will and testament, and 3d. Whether he was of a sound and disposing mind at the time the same was made, and was not under the undue influence of Bailey or some other person at the time.

It was on the trial of this issue that the several exceptions to the admission or rejection of evidence we are called to pass upon were taken.

The simple fact that the testator had by his will disinherited his children, and had given his property to one not related to him by blood or marriage, is so repugnant to parental feeling, and out of the course of things, as to excite more or less suspicion in the mind that all was not right.   And when in connection with this unnatural act of the testator, it appears that he was an old man, infirm in health, and had but a few months previously left the house of a daughter and gone to live with Bailey, at whose house the will was made but two or three days before his death, this suspicion is so far strengthened by these additional circumstances as to give it the semblance of reality.   Altogether they would, and unexplained should, have more or less influence with the jury.   The following questions or others of a like character would most likely be found suggesting themselves to the mind : Why did the testator disinherit his children ?   Why did he leave his daughter's house and go to live with the appellee

but a short time before his death? Why did he put off the making of his will until a day or two before he died? Were these acts his—the offspring of his own free volition? Or were they the production of artifice and cunning, practiced on an old man by some one behind the curtain? And, if we are to judge of the tree by its fruit, who, as the event has shown, had a deeper interest in the fruit the tree has borne than the appellee?

Now all the questions put and answered, to which exceptions were taken, elicited facts tending to answer these suggestions, and to remove the influence the untoward circumstances we have stated would, unexplained, have had on the jury; or to prove the sound and disposing mind of the testator. The object of most of the questions was to prove the ill-treatment of the testator in his old age by his children. And although a wide range was allowed for that purpose in some of the questions put, we do not think the Court erred therein. Men's minds are so differently constituted and operated on, that what will influence the action of one will frequently have no influence on another. Hence it was sufficient to warrant the question, if the thing sought to be proved might have contributed to alienate the testator's parental feelings, and to create in his mind a dislike for his children. Such a state of mind would furnish a motive for giving his property to another, and repel all suspicion of undue influence.

What we have said disposes of some fifteen exceptions; but there are others that we must notice separately.

One Doctor Blumerick, was examined as a witness for the plaintiffs in error. The Doctor testified that he knew the testator, and had doctored him at Mr. Blood's, and that he saw him frequently until within two or three months before his death; that he first saw him about nine or nine and a half years before the trial, and then doctored him for inflamation of the lungs, connected with a pain in the head; that he discovered lightness in the head;

that he often saw him two or three years after that and talked with him, and that he appeared silly and would not pay him; that he sometimes rode with him in a buggy, and sometimes saw him on foot as he was coming to town or was going home; that sometimes when he saw him he would ask him to pay him for his medical services, and that he would not; and that he appeared like a silly old man; that he visited him at White's about a year and a half before, and that his impression was that he was not sick, but forgetful, weak minded, and talked nonsense, and that he had not seen him since. The witness was then asked: From what you saw, what was his (Mudge's) mental capacity?

The question we think was properly excluded. It asked for the doctor's opinion of the mental capacity of the testator some two or three months before he made his will. Mental capacity for what? To make a will, for that was in issue. This is a question of law, and not of medical science. It is for the jury, under the instruction of the Court as to what is sufficient mental capacity to make a will, to decide on its existence or non-existence when the will was executed, from the facts testified to by the witness, and not from the witness' opinion regarding such facts. The jury, and not the witness, are to draw the conclusion from the facts stated by the witness. The opinion of a physician as to the existence of disease, or a particular malady, and its effect upon the mind, would be evidence. But a physician's opinion regarding mental capacity generally, or the mental capacity necessary to make a will, is, in the eye of the law, no better than that of any other person.

A Doctor Allen was also examined as a witness for plaintiffs in error. After his examination, and after the plaintiffs in error, who were defendants in the Circuit Court, had examined their witnesses, and the plaintiff had closed his rebutting evidence, the doctor was recalled by the plain-

tiffs in error, and asked the following question: Were there any symptoms of paralysis about Luther Mudge? Please state the appearance and effect upon Mudge of the nervousness you referred to in your former testimony. The questions being objected to were ruled out by the Court. They should have been asked the witness when he was on the stand and gave in his evidence, or at all events before the rebutting testimony was closed. It was discretionary with the Court, at that stage of the trial, under all the circumstances, to receive the evidence or not; and there is nothing in the bill of exceptions showing the discretion was not wisely exercised.

The objection to Chubb as a witness on the ground that he was surety on the appeal bond given by the defendant in error, was properly overruled by the Court. He was not a party to the appeal, nor was it prosecuted in whole or in part in his immediate and individual behalf: *Comp. L.* § 4339.

The only remaining question is, whether the verdict of the jury warrants the judgment of the Court admitting the will to probate. The jury found the will in question was the last will and testament of Luther Mudge deceased, and that at the time of executing it he was of a sound and disposing mind and memory, and capable of disposing of his property by will. But they did not find whether it was "made under undue influence from said Bailey or any other person." They could not have found as they did, that the will in question was the last will and testament of Luther Mudge, without at the same time having found that it was made of his own free will and accord, and not under or in consequence of any undue extraneous influence. All such influence is necessarily negatived in finding the will to be his will. And the law is too well settled to need discussion, that where the issue found necessarily negatives the one not found, the judgment will not be reversed:— *Brooks v. Delrymple*, 1 *Mich.* 145; *Law v. Merrills*, 6 *Wend.* 268.

The judgment of the Circuit Court I think should be affirmed, with costs.

CAMPBELL J.:

I concur with my brother Manning in the conclusion that there was no error in the rulings and proceedings below. But, so far as relates to the exclusion of Blumerick's testimony concerning the capacity of the testator, I think there were good reasons for the decision beyond those relating to the mere form of the question, which is not in itself to my mind very conclusive.

Doctor Blumerick was introduced apparently as a medical expert, to give opinions not supposed to be receivable from others. Undoubtedly there are many cases in which medical witnesses can do this. They may sometimes, where a question arises upon the proper scientific conclusions depending on facts sworn to by others, give their opinions upon a hypothesis presented to them, as to what such facts denote. Before doing so, however, the witness must be examined as to his qualifications as an expert. But when he is examined concerning facts which have occurred under his own observation, and his opinion is required concerning the proper inferences from those facts, he occupies, as to the facts themselves, the same position with all other witnesses, although there may be some questions arising out of the facts which he can answer and which others can not. Upon questions of mental capacity even non-professional witnesses may give evidence, not only of specific facts and conduct falling under their own observation, but also of the impression they derived at the time, involving to some extent matters of opinion. The difference between them and those who in addition to being eye witnesses are also experts, is, that there may be peculiar indications which the latter understand better, and concerning which they can express an opinion as scientific deductions, and not were common sense inferences. But neither class

can be allowed in any case to give an opinion upon mental capacity or condition, without first showing the circumstances and facts upon which that opinion is based. This is necessary for two reasons: *First*, it is necessary in order to enable other experts to determine whether the opinions expressed by the witness are correct, and to enable the parties to contradict them if wrong: *Second*, it is necessary in order that, if an opinion is given on a mistaken or perverted statement of facts, the truth may be elicited from others to destroy the foundation of the conclusions. And a third reason might be mentioned, which is that the Court and jury may know from his opportunities what means the witness had of forming any opinion at all. These are rudimentary principles which can not safely be departed from.

It is certainly very far from clear that in such a case as the one before us there was any room for the evidence of experts. The previous evidence of Blumerick—so far as it went—tended to negative any thing like insanity, and referred only to weakness arising from natural decay, and age. Without undertaking to lay down any inflexible rule, it certainly must, as I think, be very rarely true that experts can in such cases give a jury more light than can be derived from other intelligent eye witnesses. Such was the view taken in *Dewitt v. Barly*, 17 *N. Y.* 340; and such is the result of common experience.

In the case before us, Dr. Blumerick was asked, from what he saw on a certain occasion several months before the death of Mudge, what was the mental capacity of the latter. He had given no testimony whatever concerning any facts or appearances. It did not. appear from his evidence whether his attention had been called to this particular subject. In short he had stated no fact whatever which either a jury or another witness could apply or test. While there are many cases in which a want of capacity three months before a will is executed must indicate a continued incapacity, there are others which

would not. Until it is known which of these appearances were relied on, it could not well be determined whether an opinion—if otherwise competent—ought to be received in evidence. And until the facts were shown, it could not be determined whether the witness was competent to form any opinion whatever, or whether there was room for any inferences not within the unaided good sense of the jury.

Had the witness been fully examined concerning his means of observation, and also concerning the facts he actually observed, it is possible that the question put, although somewhat too broad in form, might not have been legally objectionable; and it does not seem to have been objected to on this account. But, standing alone, it was certainly immaterial what opinion any person had formed upon the condition of the deceased, because there was no legal basis shown on which it could be rested.

I concur in sustaining the judgment.

CHRISTIANCY J. concurred in this opinion.

MARTIN CH. J.:

I concur with my brethren that the judgment should be affirmed. The question put to Dr. Blumerick was properly overruled, both because it was incompetent—the question at issue not being of mental capacity merely—and also because he had not shown that intimacy of knowledge of Mudge and of his capacity at the time of making the will which would enable him to testify either as an expert or in any other capacity. How far the testimony sought to be obtained from him is admissible, and under what circumstances, are questions upon which Courts somewhat differ; and I do not deem their consideration necessary, so long as the witness was not shown competent to give it under any rule.

*Judgment affirmed.*