CATHERINE O'CONNOR ET AL. v. MARY MADISON ET AL.

*Will—Mental competency—Evidence.*

1. The opinion of a witness upon the question of the competency of a testator is admissible only when it appears that the witness was sufficiently acquainted with him to be able to form an opinion; and the trial judge may properly require the witness to state all of the circumstances upon which his opinion is based before permitting him to state his opinion, and perhaps it would not be a great stretch of discretion if he permitted cross-examination before allowing the opinion to be given.[1]

2. An opinion that a testator was incompetent can only be given when the witness has testified to circumstances upon which it is predicated, and which to some extent justify it; citing *White v. Bailey*, 10 Mich. 161; *Beaubien v. Cicotte*, 12 Id. 459; *Kempsey v. McGinniss*, 21 Id. 123; *Rice v. Rice*, 50 Id. 448; *Prentis v. Bates*, 88 Id. 567, 93 Id. 234.

3. The extent of such testimony must depend upon the familiarity of the witness with the testator, the character of the disqualification, the nature and number of extraordinary circumstances detailed, and proximity to the act involved in point of time; and, taken as a whole, they should move the judicial discretion of the trial judge by apprising him that the witness may fairly doubt the competency of the person upon reasonable grounds; citing *Prentis v. Bates*, 93 Mich. 242; *Lynch v. Doran*, 95 Id. 395; and this discretion must be carefully exercised; citing *Rice v. Rice*, 53 Mich. 432.

4. The rule admitting the declarations of a sole devisee as competent evidence to prove undue influence does not extend to cases where there are several devisees or legatees.

5. Repeated efforts to introduce testimony against the decision of the trial judge are unseemly, and except in cases where something has been inadvertently omitted, or where counsel has not anticipated the ruling made, should not be made or permitted.

---

[1] See *Haines v. Hayden*, 95 Mich. 332, for an exhaustive discussion by Court and counsel of the questions of mental incompetency, undue influence, subsequent declarations, etc.

Error to Wayne. (Reilly, J.) Argued November 17, 1893. Decided December 22, 1893.

Appeal from the probate of a will. Contestants bring error. Affirmed. The facts are stated in the opinion.

*James H. Pound,* for appellants.

*Clarence A. Lightner,* 'for proponents.

HOOKER, C. J. The will of John O'Connor being admitted to probate, the contestants appealed ·to the circuit court, where, by direction of the court, the jury rendered a verdict in favor of the proponents, and contestants again appealed.

The will is attacked upon the grounds of (1) mental incapacity of the testator, and (2) undue influence. The testator was an unmarried man of nearly 80 years of age, who had resided at Detroit for many years, and, for some 9 years previous to his death, had lived with Mrs. Elizabeth O'Connor and her daughter Catherine. Etta Van Buren, another daughter of Elizabeth O'Connor, lived upon adjoining premises. Elizabeth was the widow, and Catherine and Etta were daughters, of Thomas O'Connor, a deceased brother of the testator, who had resided in Detroit previous to his death. The will was made about six months before the testator died. Counsel for contestants asserts that he died possessed of upwards of $40,000. The will gave three parcels of real estate to Etta and Catherine upon condition that they care for their mother during her life; $300 to his niece Mary (O'Connor) Madison for her care of his brother James (deceased); bequests to three charities in Detroit, aggregating $1,000; and the residue to Catherine O'Connor. The contestants are Mary (O'Connor) Madison and her two brothers, children of testator's brother Patrick, who died in Ohio about eight years previous to the death of the testator.

The 111th assignment alleges error in that the court directed a verdict for proponents. This direction was right, if there was no evidence to go to the jury upon the subject of undue influence, and if mental competency was proved. The burden of proving the latter was upon the proponents, and a *prima facie* case was made out by the testimony of the witnesses to the will. To overcome it, several witnesses were sworn upon behalf of the contestants:

William J. Shields, who met testator in front of the city hall, said that his eye-sight seemed poor, for he did not recognize him for a second or two; that he had failed considerable physically since he met him a year before; that he shuffled along when he walked, and seemed very feeble; and that his voice was weak. He joked the witness about getting married, as he had been in the habit of doing. The witness stated that he hardly thought he was able to judge of testator mentally.

James Shields, Sr., testified that the testator was an old acquaintance, and that he visited the witness about a year before he died, returning home alone about 9 P. M. upon a street car; that he was physically feeble, and needed assistance to the car, though he objected to witness accompanying him; and that he dropped twice, with his knee upon the sidewalk. The witness saw him again in October or November before he died. He was upon the opposite side of the street, and appeared weaker. He also stated that "during the last year everything about him seemed to fail, and naturally his strength failed, and his opinion." He then stated that he thought him incompetent to make this will, and gave as a reason that the will was so different from what testator had previously said he intended to make it. The witness saw him last a short time before death, and was then told by testator that he (testator) was not long for this world.

John Hardie, a witness about the same age as testator,

crossed the street to meet him the fall before he died, but did not address him, because he appeared in a passion, and tried to get away as soon as he could, for fear people would think that they were quarreling. No further explanation of the transaction was given.

Frederick H. Corbett, a tailor, who had left Detroit in 1885, returned in 1888. He had at one time had a land deal with the testator, and after his return, and in September, 1889, he went to see the testator for the purpose of trying to sell him some southern lands, but he did not find him in condition to do business. He does not seem to have discovered this until, after an attempt, lasting about 15 minutes, to interest the testator, the latter got angry, and pushed the papers across the table, and refused to have anything to do with the matter. He stated that testator was feeble and decrepit, and he could not make him understand about it at all. He was fidgety and deaf, and told witness that he did not want to do any more business with him. So, witness says that he conceived the idea that there was no use trying to do any business with him, for the reason that he was not capable of doing it. The court refused to allow this witness to testify to his opinion in relation to the testator's competency until he should relate the conversation that occurred at the time of this transaction. The testimony of this witness, especially in the light of the cross-examination, rather tends to create the belief that the testator recollected the past, and was able to look after his financial affairs with some prudence. Had he, at his age, yielded to the witness' importunities, and bought a piece of land in a remote state, there might have been more reason for doubting his competency.

One other witness testifies upon this subject,—Andrew J. Scott. He says that the testator was debilitated physically, but able to get about until in the winter; that he was pretty deaf.

"In talking with him I had no difficulty, except that I had to talk loud. He would answer as though he understood. Sometimes he would not answer, but he was a peculiar man that way. He failed some the last year. I had an interview with him three months before he died. Old age appeared to be getting on him. He did not talk as he used to. He was a very solid talker, and had good judgment."

In this interview he asked the witness about a man who lived in Ireland, in a part of the country witness never knew. The witness told him "yes," to please him. Then he asked which road they came to town on,—the old or new,—and the witness, to please him, said they came by the new line. Then he was asked his opinion as to competency, and his testimony was excluded. This was some time after the will was made.

The opinion of a witness upon the question of the competency of a testator is admissible only when it appears that the witness was sufficiently acquainted with him to be able to form an opinion; and it may be considered settled that the trial court may properly require the witness to state all of the circumstances upon which his opinion is based before permitting him to state his opinion, and perhaps it would not be a great stretch of discretion if he permitted cross-examination before allowing the opinion to be given. An opinion that a man is incompetent must be supported by some evidence that is inconsistent with competency. Hence, it is for the court to pass upon the competency of the witness, and, unless there is something that legitimately tends to show incompetency, the opinion cannot be taken; and we cannot approve the course taken in this case, of repeatedly asking the opinion of the witness without a full showing of the circumstances within the knowledge of the witness. Eliminating such opinions as were given, there is no testimony fairly tending to show incompetency. It is shown that the testator was old, that

he failed in health, that he was feeble, that his mind was not so strong as formerly, and that he was deaf; but all these things were under circumstances that raise no presumption of incompetency. A witness stated an instance of forgetfulness, but it was three months after the will was drawn. This will was not very complicated. The transaction, when it was made, shows an appreciation of his situation.

The opinions of acquaintances upon the subject of competency are admissible where the witness is shown to have had the means of observation. This was fully discussed by Mr. Justice CAMPBELL in the case of *Beaubien v. Cicotte,* 12 Mich. 459. It may be claimed that from that case the inference should be drawn that the opinion of an acquaintance, who saw the testator at the time of the alleged incompetency, may be given in the first instance, leaving cross-examination to test the value of such opinion. But upon page 501 it is said:

"The practice permits all who have had means of observation to testify concerning the existence and measure of capacity with reference to the matter in controversy. * * * In every case the witnesses who speak from their own observation are expected to describe, as well as they can, what has lead to their conclusions, as well as their means of observation; but the cases referred to show that in many instances the results of very limited observation have been permitted."

Again, on page 503, it is said:

"But no testimony can be of *any real value* unless it appears the witness had *adequate* means and opportunities for forming some conclusion."

This opinion, if read in the light of the writer's opinion in the case of *White v. Bailey,* 10 Mich. 161, leaves no room for doubting that it is the settled law of Michigan that an opinion that a testator was incompetent can only be given when the witness has testified to circumstances

upon which it is predicated, and which to some extent justify it. *White v. Bailey,* 10 Mich. 161; *Beaubien v. Cicotte,* 12 Id. 459; *Rice v. Rice,* 50 Id. 448; *Kempsey v. McGinniss,* 21 Id. 123; *Prentis v. Bates,* 88 Id. 567, 93 Id. 234. The extent to which such proof must go. cannot be limited by an inflexible rule. It must depend upon the familiarity of the witness with the testator, the character of the disqualification, the nature and number of extraordinary circumstances detailed, and proximity to the act involved in point of time. Taken as a whole, they should move the judicial discretion of the trial judge, by apprising him that the witness may fairly doubt the competency of the person upon reasonable grounds (*Prentis v. Bates,* 93 Mich. 242; *Lynch v. Doran,* 95 Id. 395); and this discretion must be carefully exercised (*Rice v. Rice,* 53 Mich. 432). We have carefully examined the testimony in the case, and find no witness who was qualified to testify to such a fact under this rule.

The further claim was made that the will was the result of undue influence exercised by the several devisees. We do not find any proof upon this branch of the case, and the judge was justified in saying so to the jury.

It being determined that the proofs taken vindicate the court in his direction of a verdict, it follows that the judgment should be affirmed, unless the court has erroneously excluded evidence which might have raised a question for the jury.

As stated, the assignments of error are numerous, but many of them are repetitions of the same legal question, and no attempt will be made to disquss them separately. A large number of assignments have been covered by what has been said about the competency of witnesses, and they need not be further alluded to. Other questions were subsequently answered, and hence the objections lost their force, if they had any.

Upon the question of undue influence the contestants complain that they were not permitted to show the relations existing between the testator and the proponents, with whom he lived, by showing their treatment of him and remarks about him. Assignments 5 and 70 are based upon the exclusion of the questions: "Will you state to the jury, so far as you could see in the house, as to whether the old gentleman did what they wanted him to?" and, "Will you state, Mrs. Morris, under whose control he was during the last six months of his life, that you saw?" The first question was asked of a nephew, one of the contestants, who visited testator several years before his death. The objection was sustained, but the witness answered the question fully as to the conduct of affairs· The other question called for a conclusion, and was objectionable for that reason, if no other.

An attempt was made to prove undue influence by showing statements of the several devisees. The court excluded this testimony, and error is assigned thereon. The theory upon which this testimony has been held admissible has been said to be that the legatee was a party in interest. Mr. Greenleaf says (2 Greenl. Ev. § 690) that such declarations are admissible where the legatee is a party to the record or a party in interest, but not otherwise. The authorities upon which this is based are as follows: *Atkins v. Sanger*, 1 Pick. 192. That case was tried upon appeal before three of the five justices, who decided to admit the evidence of one of three legatees. No opinion is written by the court, and the reporter contents himself with the following brief statement, viz.:

"The chief justice, after a short consultation with his brethren, said the court were inclined to admit evidence of the declarations of either of the executors as to facts which took place at the time of making the will." He adds: "This decision does not interfere with the case cited of *Phelps v. Hartwell* [1 Mass. 71]."

A note is appended, as follows:

" On the issue of *devisavit vel non,* the declarations of one of the devisees, who is not a party to the record, are not evidence to invalidate a will *(Lightner v. Wike,* 4 Serg. & R. 203; *Bovard v. Wallace,* Id. 499; *Nussear v. Arnold,* 13 Id. 323); but the declarations of a sole devisee would be evidence."

Thus, we find the case of *Atkins v. Sanger* discredited upon its face. A reference to the case of *Phelps v. Hartwell,* 1 Mass. 71, shows that such evidence was excluded, and that there was very little justification for the statement of the reporter in the case of *Atkins v. Sanger,* that " this decision does not interfere with the case of *Phelps v. Hartwell.*" The editor appends a note to the latter case, in which he says: " Such evidence was admitted in the case of *Atkins v. Sanger.*" It is worthy of mention that Sedgwick, J., in the case of *Phelps v. Hartwell,* said that, if the person who made the declaration had been solely interested, the testimony would have been admissible.

The Pennsylvania decisions cited in the note to the section cited from Greenleaf are interesting. In the case of *Lightner v. Wike,* 4 Serg. & R. 203, it was held that the declaration of an executor and devisee that testator had left no will was not admissible. In *Bovard v. Wallace,* Id. 499, a similar doctrine was held. In *Nussear v. Arnold,* 13 Serg. & R. 329, the court reiterates the doctrine, citing the case of *Phelps v. Hartwell,* 1 Mass. 71, as the only decision directly in point that the writer of the opinion had been able to find, outside of the Pennsylvania cases. This case also implies that the rule is different as to the declaration of a single devisee. Thus, we find that the authorities cited by the counsel for appellants do not sustain his position. This doctrine of *Phelps v. Hartwell* is supported by the following cases: *Blakey v. Blakey,* 33 Ala. 617, and cases cited; *Thompson v. Thompson,* 13 Ohio St. 356; *Shailer v. Bumstead,* 99 Mass. 127.

The question was referred to by this Court in *Re Estate of Lambie,* 97 Mich. 49, where the declarations of one who was devisee of the entire estate was held admissible. But we think that the rule does not extend to cases where there are several interested in sustaining the will, as in this case. An inspection of the record shows 27 assignments of error upon questions of this character, after the court had signified that such testimony was not admissible. The question being once fairly raised and decided, the court might, with propriety, have required counsel to refrain from repetition.

In passing, we feel constrained to criticise the proceedings upon the trial to the extent of saying that attempts to introduce the opinion of a witness before he has fully stated all the circumstances upon which it is based should not be indulged in. As a climax to circumstances legitimately raising the doubt of competency, the opinion may be asked. The court can then pass upon it intelligently, and his ruling can be satisfactorily reviewed. Repeated efforts to introduce testimony against the decision of the judge are unseemly, and except in cases where something has been inadvertently omitted, or where counsel has not anticipated the ruling made, should not be made or permitted. Attempts to meet such emergencies as those mentioned will seldom be obstructed, and, once the court's ruling is ascertained, counsel should endeavor to conform to it as closely as the legal rights of his client will permit. By such a course the administration of justice is facilitated, and mutual confidence of judge and counsel assured and preserved, in and for which both, as officers of the court, are equally interested and responsible.

Of the 111 assignments of error, 110 arise upon the introduction of evidence, and, of these, 17 are based upon the exclusion of answers to questions by contestants' counsel upon the objection that they were leading. The harm

in leading questions is done when the question is asked, and, while such questions have their proper place and use, we think no court or opposing counsel should be required to submit to repeated infractions of the rule. Every lawyer should know that they are within the discretion of the court, and, if 17 questions were necessary to ascertain the inclination of the trial court, it would at least seem unnecessary to trouble this Court with them.

After a careful analysis of the proof and the several assignments, we find no error in the case. The judgment will therefore be affirmed, with costs.

The other Justices concurred.