## In re WOODWORTH'S ESTATE.

1. WILLS—PROBATE—EVIDENCE—CONVEYANCES BY DECEASED.

In a contest over a will, which contained no provision for the husband of testatrix, evidence was admissible to show that she had executed to him in the stead of a testamentary provision a quitclaim deed of her interest in the homestead held in common by the husband and wife.

2. SAME—COMPETENCY—EXPERT AND OPINION EVIDENCE.

It was not error to reject the opinion of a witness as to the mental incompetency of deceased, supported only by evidence that deceased failed to recognize the witness about the time the will was made, that she might have been asleep or in a stupor, but recognized the witness later when she opened her eyes.

3. SAME—DIRECTING VERDICT—INCOMPETENCY.

The question of mental incompetency should not be submitted to the jury, where witnesses give testimony which tends to show the mental capacity of testatrix, and no opinion or facts tending to show incompetency are produced.

4. SAME—UNDUE INFLUENCE—EVIDENCE.

Undue influence cannot be predicated upon opportunity alone.

5. SAME—QUESTION OF FACT.

It is proper to refuse to submit to the jury the question of undue influence in the absence of evidence tending to show that some person made an attempt to influence the testatrix; and the suggestion of her sister that she should execute a will and provide for her husband did not amount to undue influence.

Error to Jackson; Parkinson, J. Submitted June 21, 1910. (Docket No. 118.) Decided September 27, 1910.

John S. McConnell and others presented for probate the last will and testament of Agnes P. Woodworth, deceased. The will was allowed in the probate court, and George O. Woodworth, contestant, appealed to the circuit court. A judgment for proponents on a verdict directed by the court is reviewed by contestant on writ of error. Affirmed.

*Grove H. Wolcott* and *R. S. Woodliff*, for appellant.

*Thomas E. Barkworth*, for appellees.

BIRD, C. J. This proceeding had its beginning in the probate court of Jackson county, to probate the last will and testament of Agnes P. Woodworth, deceased. The probate of the will was resisted by George O. Woodworth,

the husband of the testatrix, upon the grounds of undue influence and mental incompetency. The will was admitted to probate, and an appeal was taken to the circuit court, where a trial resulted in a directed verdict in favor of the will. After the trial in the circuit court, the contestant died, and the suit is now being prosecuted in this court by a special administrator, representing the estate of the contestant.

The testatrix was 74 years old when she executed the will. It was executed during her last illness, which lasted about two weeks. She inherited from relatives the estate which she left, and it was of the value of $5,300. The homestead was valued at $2,500, and they owned it as tenants in common. The testatrix and the contestant had lived together about 42 years, and most of the time in the city of Jackson. They had no children. The husband had no property save his interest in the homestead. He had not been very successful in accumulating property, and had managed his wife's financial affairs so badly that she placed them in the hands of her brother, J. Scott McConnell. The will was prepared from memoranda which she dictated to Judge Hammond, an old and reputable practitioner of the city of Jackson. It was a simple will, in which she gave her husband "sufficient furniture, bed, and bedding to comfortably furnish a room." She divided her household furniture and personal belongings among her relatives, and to her sister, Cordelia E. Markham, she gave her bonds, amounting in value to $3,500, and to her brother, J. Scott McConnell, she gave the balance of her estate, amounting to about $1,800, and nominated him as executor of the will.

It was insisted by the contestant that she was not in a mental condition to dispose of her property; that, by reason of her illness and the effect of a certain medicine which had been given her, she was incapacitated to make a will; and that, if she had any testamentary capacity at the time the will was made, it had been overcome by the

influence of her sister, Cordelia Markham, the principal legatée.

The assignments of error raise three questions, to which attention will be given:

(1) Was the trial court in error in admitting the evidence relative to the quitclaim deed and the circumstances attending it?

(2) Did the trial court err in directing a verdict upon the question of mental incompetency?

(3) Was it error to direct a verdict on the question of undue influence?

1. The court admitted in evidence a quitclaim deed of the homestead, executed by testatrix the day following the making of the will, conveying her interest in the homestead to her husband, and also permitted the circumstances under which it was made to be shown. It appears that, when testatrix detailed to Judge Hammond the disposition which she desired to make of her property, she informed him that it was her wish that her husband should have her interest in the homestead. The deed transferring the property to them was shown to Judge Hammond, and he, observing that it ran to husband and wife, assumed, without further inspection, that they owned it by the entirety, and he advised that nothing further would be necessary to vest the title in the husband after the death of testatrix. Subsequently this was questioned by the contestant, and Mrs. Markham took the deed to Judge Hammond, whereupon, after an examination, he found that the homestead was conveyed to testatrix and her husband, as tenants in common, and that they were not the owners of it by the entirety. Judge Hammond then suggested that, inasmuch as the will had been made, it would be better to transfer her interest in the homestead by a quitclaim deed, which was at once prepared, the matter explained to testatrix, and she executed it.

Counsel for contestant are very strenuous in their contention that this testimony was not competent. We are

unable to agree with them.   We think it was competent to show to what extent the testatrix had aided the contestant, whether before or after the making of the will. *Beaubien* v. *Cicotte*, 12 Mich. 459; *Bush* v. *Delano*, 113 Mich. 321 (71 N. W. 628).   It was admissible for another reason.   It tended to rebut the inference which was sought to be drawn from the provisions of the will that the contestant had not been dealt fairly with by the testatrix in the disposition of her property.   A conveyance of one-half of the homestead to her husband was a part of her plan in disposing of her property, and the one-half interest, according to the testimony, was worth $1,250, and without doubt she would have devised it to him in the will but for the erroneous impression of Judge Hammond.   The fact that her interest in the homestead passed to contestant by deed rather than by devise made him no less a recipient of her bounty.

2. It is claimed by the contestant that the question of the mental incompetency of the testatrix should have been submitted to the jury.   The proponent called several witnesses to establish the mental competency of the testatrix, and among them were Judge Hammond, who prepared the will; Emma Cole, an old acquaintance and neighbor; Emma Smith, the nurse who cared for her in her last illness; and Dr. Walter Snow, the attending physician. All these witnesses testified that the testatrix was physically weak, but that her mind seemed clear.   The testimony showed that no drug was administered to testatrix which would affect her mind until several days after the will was executed.   The nurse testified that "Mrs. Woodworth's mind seemed clear until after we gave her morphine," and Dr. Snow testified that morphine was not given to her until the last four days of her life.

The contestant was a witness in his own behalf, but he gave no testimony tending to show that testatrix was mentally incapable of making the will.   Only one other witness was sworn and testified for contestant, and she was not interrogated upon that subject at all.   It is very

clear to us that the trial court committed no error in refusing to submit this question to the jury unless the opinion of Janet Cassidy should have been received. Mrs. Cassidy was a neighbor and was invited in to witness the will. She testified on behalf of the proponent. At the conclusion of the cross-examination she was asked by the contestant for her opinion as to the mental competency of the testatrix to make the will. The court refused to allow her to answer, on the ground that she had stated no facts which tended to impeach the will. Contestant claims this was error. The substance of Mrs. Cassidy's testimony was that she called to see the testatrix the day the will was made and the day previous, and the testatrix did not recognize her at first nor greet her as she was accustomed to do. She had her eyes closed, and witness was not sure she was not asleep. Afterwards testatrix opened her eyes and recognized her. She also testified that on the day the will was made she heard her sister, Mrs. Markham, talking to the testatrix, and the testatrix lay, apparently, in a stupor. On this occasion she also had her eyes closed, and the witness was not sure whether testatrix was sleeping. The witness related no irrational conversation or extraordinary conduct on the part of the testatrix, which was inconsistent with competency. What she did relate was entirely consistent with the theory that testatrix was sleeping at these times. The testatrix was ill and physically weak, and it would not be expected that she would recognize and greet a neighbor as quickly and cordially as she would when she was well. If she awoke suddenly and saw a neighbor standing at her bedside, and for the moment was unable to tell who she was, but later recognized her, it would furnish no grounds for saying that she was incompetent.

Under the rule established by this court, we think the trial court was right in excluding the opinion of the witness. *Prentis* v. *Bates*, 93 Mich. 234 (53 N. W. 153, 17 L. R. A. 494); *O'Connor* v. *Madison*, 98 Mich. 183 (57

N. W. 105); *Lamb* v. *Lippincott*, 115 Mich. 611 (73 N. W. 887).

3. Should the question of undue influence have been submitted to the jury ?   The testatrix decided during the first week of her illness that she would make a will. Judge Hammond, an old acquaintance, was sent for, and, when he came, she dictated to him the disposition she desired to make of her property.   The will was prepared and read over to her, and she stated it was as she desired it.   Her sister, Mrs. Markham, was present, helping to care for her, and her brother, J. Scott McConnell, was also present.   Both were present at the request of testatrix.   The witness Janet Cassidy testified that she heard Mrs. Markham, on the morning that the will was made, say to testatrix that she had better make a will and provide well for George (Woodworth).   Mrs. Markham admitted saying this in substance, but gives as a reason that her sister had given her so many instructions as to the distribution of her silverware, wearing apparel, and furniture that she told her that she was afraid she could not remember all the instructions, and that she (testatrix) had better make a will and then there would be no trouble about it.   This was a proper suggestion upon the part of Mrs. Markham, and we see no attempt in the suggestion to influence testatrix in favor of any one, unless it was on behalf of contestant himself.   Testatrix's brother and sister may have been in a position to influence her; but there is no proof in the record that they did so or attempted to do so, or that any one else attempted to influence her in the slightest degree as to a disposition of her property. Something more than this must be shown to carry the question of undue influence to the jury.   Undue influence cannot be predicated upon opportunity alone.   *Severance* v. *Severance*, 90 Mich. 417 (52 N. W. 292).   We think the court was right in refusing to submit the question of undue influence to the jury.

The appellee has discussed in his brief the question as

162 MICH.—44.

to whether the administrator of contestant is a proper party to this appeal. We think the view this court has taken of the case renders that question unimportant.

The judgment of the trial court sustaining the will is affirmed.

OSTRANDER, HOOKER, BLAIR, and STONE, JJ., concurred.