*In re* MCMASTER'S ESTATE.

COOPER *v.* HARLOW.

1. APPEAL AND ERROR—ASSIGNMENTS OF ERROR—SUFFICIENCY—COURT RULES.

An assignment of error that the court erred in refusing proponent's requests to charge, numbered first, second, fifth, etc., is sufficiently specific, where the requests are numbered in the bill of exceptions.

2. SAME—CHARGE OF COURT.

Paragraphs of the court's charge, which are numbered in the bill of exceptions and included in one assignment of error, may be taken distributively.

3. WILLS—UNDUE INFLUENCE—COMPETENCY OF TESTATRIX.

On the trial, on appeal, of the question of the valid execution of a will, by which the testatrix gave to her confidential agent a large bequest and the residuary portion of her estate, assigning a reason therefor which was not correct, it was not error to submit to the jury the questions of undue influence and of mental incompetency, under evidence tending to show that he recommended to her a person to draft the instrument, procured the preparation of the will, was present when it was executed and acted as its custodian until her decease, and that the testatrix was about 80 years of age at the date of its execution.

4. SAME—FIDUCIARY RELATIONS—PRINCIPAL AND AGENT—UNDUE INFLUENCE—PRESUMPTIONS.

It was error to charge the jury that the rule prevailing in ordinary cases, casting the burden of proof of undue influence on contestants, was here reversed and that the presumption of fact arising from the confidential relation borne by the proponent and from the legacy bequeathed to him, required him to show to the satisfaction of the jury that any connection he may have had with the execution of the will was fair and honest.

5. SAME—UNDUE INFLUENCE—EVIDENCE.

Such presumption is one of fact, the force and effect of which is for the jury and which depends in every case upon all the circumstances.

6. SAME—INSTRUCTIONS TO JURY.

It was improper for the trial judge to intimate an opinion in his instructions to the jury that the circumstances presented strong evidence of undue influence.

7. SAME — EVIDENCE — IMPEACHMENT — STATEMENTS OF LEGATEE AFTER EXECUTION OF WILL.

Statements of proponent who was charged with employing undue influence as to matters relating to the execution of the will, made subsequently to the decease of testatrix and conflicting with his testimony on the stand, were competent to impeach him and to support the presumption of undue influence that arose from his relations with the testatrix.

8. SAME—CHARGE TO JURY—EVIDENCE OF UNDUE INFLUENCE.

A request was properly denied which asked the court to charge the jury that the provisions of the will had no tendency to prove undue influence or fraud, standing alone, where it was impossible to dissociate the instrument from surrounding circumstances tending to show undue influence.

9. SAME—EVIDENCE OF INCOMPETENCY—OPINIONS OF NONEXPERT WITNESSES.

The opinions of witnesses as to the mental incompetency of the testatrix, based on ordinary knowledge and observation, should not have been received in evidence unsupported by sufficient testimony of observed facts and conditions on which the opinion was based.

10. SAME—RELATIONSHIP—EVIDENCE.

Error was committed in receiving evidence of the financial condition and state of health of deceased's cousins who had no claim upon her bounty.

11. SAME.

In view of an attempt to show that the testatrix had demonstrated affection towards a nephew, the exclusion of evidence of reasons known to her for making no other provision for her nephews was improper.

12. SAME—HEARSAY.

A statement of the nephew that he purposed studying hypnotism to hypnotize her and get her to make a will in his favor, was not competent in the absence of evidence that she knew of his purpose, or that he attempted to execute it.

13. SAME—CROSS-EXAMINATION.

Contestants were entitled to subject the proponent to a searching cross-examination, and to ask if he knew of any reason why she made him a legatee.

14. SAME.

A conversation which, standing alone, might not tend to show undue influence, was a proper subject of consideration by the jury with other evidence having such tendency

Error to Jackson; Parkinson, J. Submitted June 29, 1910. ( Docket No. 72.) Decided November 11, 1910.

Edmund L. Cooper presented for probate an instrument purporting to be the last will of Sarah W. McMaster, deceased. An order was entered in probate court admitting

the will to probate, and Arthur O. Harlow and Byron N. Harlow, heirs at law of deceased and legatees under the will, appealed the cause to the circuit court where a judgment was rendered disallowing the will. Proponent brings error. Reversed.

*Richard Price* (*Thomas E. Barkworth*, of counsel), for appellant.

*Wilson & Cobb*, for appellees.

OSTRANDER, J. Sarah W. McMaster, whose maiden name was Harlow, died at Grass Lake, in Jackson county, Mich., August 28, 1907, aged 81 years. She was a widow; her husband having died in 1895. She left an estate, consisting principally of personal property, valued at more than $32,000, owing, practically, nothing. An instrument, executed by her, dated April 21, 1906, was offered for probate as her last will. It was admitted in probate court after a contest made by two nephews and heirs at law, named Arthur and Byron Harlow, but in the circuit court was found by a jury not to be her last will. The nephews asserted the mental incompetency of the testatrix to execute a will and that she was unduly influenced with respect to its terms by Edmund L. Cooper, the proponent, who was nominated executor in the will, was given a specific legacy of $1,000, and was also made the residuary legatee. Mrs. McMaster had no children. Her brother, John Harlow, lived in Grass Lake. Another brother, Oscar Harlow, died in 1890, and his sons are the contestants. Mrs. McMaster also executed, on April 21, 1906, a power of attorney by the terms of which Edmund L. Cooper was empowered to care for her property, transact all of her business, including the collecting, lending, and investment of her money, the assignment and discharge of mortgages, the management and control of real estate. The instrument proposed as her last will bequeathed to each of the nephews above named $5,000 to be paid in annual installments of $1,000. There was a

bequest of $2,000 to Ella Hatch, a niece of her husband, one of $1,500 to her cousin, Clarence McFarran, one of $5,000 to the First Congregational Church of Grass Lake, besides the one of $1,000 to Edmund L. Cooper, and none of these were made payable until one year after her death. The bequest to the church is in trust, with directions to invest the money in first mortgages on real estate and to use the income only to pay the salary of the minister. Cooper was made trustee of the fund. The clause disposing of the residue of the estate contains the following sentence:

"This provision is made because of the many acts of kindness of said Cooper, for favors shown to me by him, and for work and labor performed for me by him, which services have been rendered freely and without proper compensation."

It is the testimony of Mr. Cooper that he received a note from Mrs. McMaster asking him to come to her house; that he went to her house on the same day and learned from her that she desired him to prepare her last will. She had made a memorandum, upon paper, indicating her wishes in that behalf, and on account of the nature of the bequest to the church he advised her that he did not consider himself competent to prepare the will. She asked him if he could get some one to prepare it. He mentioned the name of a person, and did in fact take a memorandum made by himself to a suitable person who prepared the will and mailed it to Cooper. He took it to Mrs. McMaster, left it with her, and later, on the same day, went again to her house, when the will was read to her by him and was executed. The witnesses were suggested by Mrs. McMaster and were invited to her house by Mr. Cooper. The will was not read by them or in their presence. The person who prepared the will prepared the power of attorney, and one of the witnesses to the will also witnessed the execution of the power of attorney. The will, after its execution, remained with the testatrix until June 17, 1907, when, with some other

papers and some money, it was delivered to Cooper in an envelope prepared by him for it. It remained unopened until after the death of Mrs. McMaster. There was introduced some testimony, including opinion evidence, respecting the physical and mental condition of the testatrix at about the time the will was executed and thereafter; but it is about Mr. Cooper and his relations with Mrs. McMaster that the case is made to revolve. He was not a relative of the testatrix or of her husband. At the time of the trial he was 67 years old and had lived all of his life excepting five years in Grass Lake. He was in the dry goods trade there for 13 years and thereafter had been cashier of the Farmers' Bank for 12 years. In October, 1904, Mrs. McMaster made her first deposit in that bank, in the savings department. Before that time Mr. Cooper had known her. They attended the same church. The trial court submitted to the jury both the question of the mental competency of the testatrix and the question whether she had been unduly influenced in making disposition of her property. It is the contention of proponent, appellant, that the testimony did not warrant the submission of either of these questions to a jury, and, further, that if these questions were for the jury the jury was improperly instructed, and testimony was both admitted and rejected by the court without warrant.

This court is met by the objection that most of the points argued in the brief for proponent are based upon no special assignment of error. Supreme Court Rule 11. For example, the thirty-fifth and the fortieth assignments of error, the alleged basis for the most considerable arguments presented, read as follows:

"(35) The circuit judge erred in refusing to give the following requests of proponent, to wit: First, second, fifth, ninth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, nineteenth, twentieth, twenty-first, twenty-second, and twenty-fifth."
"(40) The circuit judge erred in charging the jury as stated in the seventh, ninth, forty-seventh, forty-eighth,

fifty-sixth, fifty-seventh and fifty-eighth, and fifty-ninth paragraphs of his charge, on the subject of undue influence and the burden of proof."

The charge of the court appears in the record in paragraphs numbered consecutively from 1 to 73. These assignments may be taken distributively, since the requests appear, numbered, in the bill of exceptions, and the references to portions of the charge are as conveniently made by numbered paragraphs as by repetition of the language used. The brief affords the aid the failure to do which was criticised in *Duff* v. *Judson*, 160 Mich. 386, 391 (125 N. W. 371), and as to the fortieth assignment each paragraph of the charge referred to relates to a rule of evidence precisely opposed to the one which proponent was insisting should be given to the jury. See, also, *Niles* v. *Rhodes*, 7 Mich. 374.

It has been stated that the case was made to revolve about Mr. Cooper and his relations with the testatrix. I am impressed that if Mr. Cooper had not been made residuary legatee, if relatives or if charities had received the portion of the estate which comprises the residuum thereof, there would have been no contest about her will, because there is very little testimony, other than the will itself, considered with the relations of Cooper and the testatrix, which can be said to have any tendency to prove the testatrix incompetent to make a last will, and none other tending to prove the exercise of undue influence. The will itself and the circumstances attending its execution lead one, naturally, to inquire: *First*, whether, Mrs. McMaster understood the effect of the instrument; and, if she did, *second*, what prompted her to give to Mr. Cooper nearly one-half of a considerable estate, solemnly assigning as a reason therefor a fact which did not exist and could have been considered by her as existing only through misapprehension? The inquiries suggested were pursued at the trial with such result that the court, in my opinion, was required to submit to the jury the question whether undue influence had been exercised in procuring

the will to be made, and, also, though I reach this conclusion with some hesitation, the question of the mental competency of the testatrix. Mental competency, in this case, includes ability to understand the meaning and effect of the residuary clause of the will and may involve, depending upon how the jury view the testimony, including the will itself, the ability to detect fraud, if fraud was attempted. Undue influence may be exerted to prevent the detection of fraud, may amount to fraud, may be strong enough to secure the provisions desired, although fraud is detected or suspected, and confidence may accept and may be relied upon to accept untruthful and fraudulent explanation. 1 Woerner's American Law of Administration, p. 44 *et seq.* It is apparent here that it is in fact impossible to wholly separate these issues. Whether they were properly developed and properly presented to the jury are questions to be, to some extent, considered.

The court instructed the jury that proponent was bound to prove that the testatrix was competent to make the will, and, in ordinary cases, the contestants were bound to prove undue influence, if undue influence was asserted. They were further instructed with respect to the burden of proving undue influence:

"Whether this rule is reversed or not in such a case as this, the connection of Mr. Cooper with the making of this will, and its execution, and the facts of his being a large beneficiary, and is named as executor, as well, also, as the relations he entered upon toward Mrs. McMaster at the time the will was executed and such as he sustained toward her at that time to the extent that these things are undisputed in this case, make up such a situation as calls upon Mr. Cooper for satisfactory explanation, and he should show to your satisfaction that it was in all respects fair and honest. The burden of doing this is upon him, and, if he has failed to satisfy you by his explanation that it was fair and honest, you should find against the will without reference to any other question in this case, or any other instruction given you, and in fact need proceed no further with your deliberations. If you do not so find, you should then consider other elements in the case."

In substance the instruction above referred to was repeated, and in addition the jury was instructed as follows:

"After the proponent had sworn the two witnesses to the will, the contestants took the case. At that time I struck out testimony already given as to what Cooper did and said after the funeral, and at the bank, about the will or his knowledge or lack of knowledge of it, and refused to admit other like testimony at that time, thinking the rules of law excluded it, but holding it could be used only to contradict Mr. Cooper, provided he made denials of such claims as to his actions or statements. If my first view was correct, I should caution you not to use such evidence except to enable you to judge of the credibility of Mr. Cooper's testimony as a witness. But I now believe I took too narrow a view of the legitimate use of such testimony and ought to have received it in the first instance. That testimony is now in the case, and you have the right to consider it not only as bearing upon Cooper's credibility as a witness, but also as substantive evidence of what he did and said, as affording such light as you deem it may reflect on the character of the will and the way it came to be made. Mr. Cooper, at the time of the reading of the will, was in the presence of the heirs at law, who would take the property had there been no lawful will, and some of the legatees who were interested on that account. Apparently he produced the will and was voluntarily reading it for the information and benefit of those interested. He was himself the largest beneficiary; he was named as executor in the will. He was not a relative. He was the trusted agent of Mrs. McMaster and in charge of her property, much of which was then in his custody. He was asked certain questions by those entitled to know. If Mr. Cooper was willing to speak at all or assume to give any information or make any statement, it was his duty to speak the truth. If you believe that he made the statement testified to, it is conceded that he concealed his actual knowledge and made positive false statements as to his lack of knowledge of what was in the will, or that he was a beneficiary, as to his knowledge of the draftsman or how it came to be drafted, and also at that time, or some other time or place not remote, did not disclose fairly his knowledge as to the value or extent of her estate and the amount he would be likely to derive from

the residuary clause. I think, in view of the circumstances, if he spoke at all, he should have spoken the truth, and not have resorted to any subterfuge, concealment, or misstatement. He should have been fair and frank. The question then arises: Why did he do this? You have the right, and it is your duty, to ask and consider this question. And I think those people had the right to ask questions as to the will and the estate and to have such questions answered by Mr. Cooper so far as he could fairly answer them, and answer truthfully. He chose, for some reason, not to do so. Why? What was the reason? Mr. Cooper has explained on the stand or testified in reference to what he did and why he did it. You are the judges as to how satisfactory or sufficient such explanation is. And in considering that answer or those explanations or reasons, you have the right, in the same connection, to take into account Mr. Cooper's experience as a business man and in respect to estates and wills, his character and standing in the community, his relations to the will and to the testatrix, and his interests and the extent of such interests, and whether they might— that is, his interests—be involved in or affected, and, if so, to what extent, by a truthful disclosure, to the end that you rightfully discern so far as possible what the real motive was that induced a man of Mr. Cooper's standing in the community to depart from the truth or attempt to suppress or conceal the truth, and in such a way, upon such an occasion. Was it because he feared the truth would imperil his interests, or some other or lesser motive? If from fear, what was there to fear from the truth, and the entire truth? Or was it for some trivial or unimportant or merely imaginary or fanciful reason that he was ready to make untruthful statements tending to mislead those who were entitled to correct information, if entitled to any from him? I state this circumstance or episode in the course of his dealings in respect to this will, not for the purpose of intimating anything of its significance or lack of it, but because it is your function and duty to consider it and give to it its real weight or influence, but no more. Do not forget or overlook what Mr. Cooper says about it. Consider his own statements and explanations in reference to it and in connection with the circumstances and situation that confronted him, as well as what he did and said at the time, to the end that you assign to it only such meaning or significance as actually and justly

should attach to it.  And you may also consider it in connection with the other evidence as to his relations to the making of the will, the part he took in it, and his interests in it, to which I have already made reference, and unless upon the whole you are able to say that the evidence on both of these phases of Cooper's conduct, so taken in connection, satisfies you upon the whole that the will is not the product of undue influence exerted by Cooper upon the testatrix, but is free from such infirmity, your verdict should be against its allowance.  I say this because I believe it to be the law that Mr. Cooper has the burden of satisfying you that the will in its making was in all respects fair and honest, and also of explaining his conduct at the time of the reading and also statements about the time of the funeral so far as you deem them proven, so as to warrant a favorable inference or conclusion, or at least prevent your drawing of inferences or conclusions fatal to his contentions.  If his connection with the making of the will is not shown to you satisfactorily to have been fair when considered in connection with these latter untrue statements or declarations, so that upon the whole, all taken together, you are not able to say the will is not due to his undue influence, your verdict should be against it, and for the contestants, even if you could not so find from either of these circumstances or considerations considered separately, as under those circumstances it is his duty to show that the will when made was free from the alleged infirmity of undue influence on his part.  If he has so explained these things to your satisfaction, then you should not find against the will on the ground of his exercise of undue influence for either of those reasons, or those reasons combined."

I am impressed that, in that portion of the charge which is first above recited, the learned trial judge intended to state a rule in harmony with the decisions of this court and with the weight of authority.  *In re Bromley's Estate*, 113 Mich. 53 (71 N. W. 523); *Dudley* v. *Gates*, 124 Mich. 440, 446 (83 N. W. 97, 86 N. W. 959).  The trouble with the instruction is that it does not also advise the jury, as it should have done, that if, in view of all circumstances disclosed, giving effect to the presumption referred to, they are not convinced that the provisions of the will favorable to Mr. Cooper were the result of fraud-

ulent contrivance or of undue influence, then, if the testatrix was competent to make the will, it ought to be allowed. The jury must have understood that in this case the contestants were relieved of a burden which in the ordinary case they would be obliged to carry. The attention of the court was directly drawn to the rule, so that lack of a fuller statement of the law was not the fault of counsel. As for this error the cause must go down for a new trial, it is proper to say, further, that the presumption recognized in the decisions and in this opinion arising from the preparation of a will by a beneficiary whose relations with the testator are confidential or fiduciary in character is a presumption of fact, the force and effect of it is for the jury and depends in every case upon the circumstances of the case. Certain circumstances will give rise to slight, and others to very grave, suspicion of wrongdoing. Slight evidence may remove or rebut the presumption in one case, while in another the presumption may become, in the face of all explanation, conclusive. It is therefore a delicate, and often a dangerous, thing for a trial court to intimate or to express any opinion concerning the force and effect of the presumption or to define or in argumentative form to state how much or what evidence is necessary to rebut it. The charge of the court, considered in its entirety, tends rather strongly to impress the jury that the circumstance that a considerable legacy was given to Cooper and the one that he was instrumental in procuring the will to be drawn are considered very strong evidence of wrongdoing, when the force and weight of the presumption was for the jury and in their judgment, all the circumstances being considered, and the mental strength of the testatrix, if they believed her to be competent to make the will, may have been entirely rebutted by the testimony and the character of proponent.

To the portion of the charge last above set out, other objections are made. It is said the court gave to the testimony referred to in the charge an effect forbidden by

the rule stated in *O'Connor* v. *Madison,* 98 Mich. 183 (57 N. W. 105). See, also, *In re Estate of Lefevre,* 102 Mich. 568 (61 N. W. 3): *Roberts* v. *Bidwell,* 136 Mich. 191 (98 N. W. 1000). In *O'Connor* v. *Madison* an attempt was made to prove undue influence by testimony of statements of devisees. As in this case, there were several interested in sustaining the will, and it was held that the testimony was properly excluded. The court was requested to charge:

"Some testimony has been introduced as to statements made by Mr. Cooper subsequent to the making of the will, and particularly at, or about, the time that the will was read; but I charge you that these statements, if you find that they were made, have no tendency whatever in this case to establish any undue influence or fraud practiced upon Mrs. McMaster at the time of making her will, and should not be considered by you, and no weight should be given them in the consideration of the question of undue influence, and neither should any weight be given by you to any acts or conduct of Mr. Cooper at or about the time of the reading of the will so far as the question of undue influence is concerned, as they have no bearing upon that subject."

The testimony was competent if for no other reason than that it tended to prove statements of the witness contradicting material testimony already given by him at the trial. Being competent for this purpose, the rule of *O'Connor* v. *Madison* would not require it to be excluded. Whether the jury should have been instructed to consider it only as it was believed to affect the credibility of Mr. Cooper is a more serious question. I am of opinion that an instruction to that effect would have been error. Whether the disposition of property made by the testatrix was the natural operation of the mind of the testatrix, or the result of fraudulent contrivance or undue influence of Mr. Cooper, depended, in view of the presumption indulged, and which has been referred to, upon facts which he testified he had knowledge of and which he had related. If he had made statements denying or concealing such

knowledge, upon occasions where an honest man in his position would be likely to speak the truth, the effect would be, perhaps, not only to discredit his testimony as a whole, but to create the suspicion that there was a reason not creditable to him for concealment and prevarication. The point presented is not simply the one of receiving or rejecting the extrajudicial statements of one of several legatees concerning the exercise of undue influence upon a testatrix whose will is proposed for probate. In all cases of the nature of the one at bar, the primary fact to be discovered is whether the instrument proposed as a will is the intelligent act of the deceased, and the interests of those asserting and contesting the existence of this fact are of secondary importance. When the fact depends in any considerable degree upon the conduct and good faith of a legatee, so much so that he becomes a necessary witness to sustain the will and to rebut a presumption that undue influence was exercised by himself, no arbitrary rule should be interposed to inquiry which will discover precisely what his conduct and influence has been. Without intending to limit or modify the rule of *O'Connor* v. *Madison*, I think it should not be extended in such a way as to require that the instruction requested be given. The charge which was given upon this subject is faulty, not because it violates the rule referred to, but because in effect it reiterates the advice that the burden of proof has shifted upon the question of undue influence, and, it may be added, is somewhat argumentative.

The jury was instructed that they might consider the provisions of the will with respect to both issues submitted to them, and the court directed attention to the reason given in the residuary clause thereof for the provision there made. The court was requested to say that the provisions of the will standing alone had no tendency to show undue influence or fraud, and that they should not regard the disposition of property which was made therein as any evidence of undue influence. The cases of *In re Hoff-*

*mann's Estate*, 151 Mich. 595 (115 N. W. 690), and *Russell* v. *Carpenter*, 153 Mich. 170 (116 N. W. 989), among others, are cited. That these cases are not in point here will be obvious to one who will examine them. Unless the provisions of the will were considered in connection with the relations of Mr. Cooper and the testatrix and his procuring the will to be drawn, the presumption which has been referred to, and which the court rightly told the jury might be indulged, would have no foundation. The instruction was properly refused because it was impossible to consider the terms of the will dissociated from the other circumstances disclosed.

The other errors assigned and argued have been considered. In view of a new trial, it is not important that they be, all of them, noticed in this opinion. Some rulings complained about are likely to be required upon a new trial, and to these I refer. Certain witnesses, after stating their observations of the testatrix, were permitted to express an opinion as to her mental competency. It is often a nice, always an important, matter to decide whether opinion evidence ought to be received from non-professional witnesses. It was proper to show the age, and the physical and mental condition, of testatrix as it was observed by the witnesses, and I am of opinion that in neither case was the opinion expressed warranted by the observations and conditions stated. Nor is it likely that the jury considered them of much value.

Testimony of the financial condition and the health of some cousins of testatrix was received over objection; the purpose of the testimony being, evidently, to show that they were in needy circumstances for whom testatrix might have made some provision in place of the one to Mr. Cooper. Their exact relationship to testatrix is not shown, nor that they, or any of them, had particular or any claim upon her bounty. I think this testimony should have been excluded. *In re Merriman's Appeal*, 108 Mich. 454 (66 N. W. 372). It was error, also, in view of the issue presented, to exclude testimony tending to prove

that reasons existed, known to testatrix, for making no other provision than she did for her nephews. An attempt had been made to prove that the demonstrations of testatrix towards one of the nephews indicated considerable affection for him. But it was right to exclude testimony of a statement made by this nephew, not within the knowledge of testatrix, that he proposed to study hypnotism for the purpose of hypnotizing her and getting her to make a will in his favor. It is not claimed that he did study this subject or ever attempted to practice it or that he could have practiced it if he had pursued the study indefinitely.

Contestants were properly entitled to subject the proponent to a searching cross-examination, and while it might properly have been limited, upon some objections, where it was not, it cannot be said that reversible error was committed. In view of the residuary clause, it was not error to permit the witness to answer the questions:

"*Q.* Then there was no reason in the world, as far as you know of, why she ever made you a legatee under her will ?

"*A.* I don't know why she did.

"*Q.* I say there is no reason in the world why she should have done so, as far as you know ?

"*A.* No, sir; that I know of."

The twenty-first request to charge was properly refused. Standing alone, the conversation referred to therein would have had no tendency to establish either mental incompetency or undue influence. It did not stand alone, when the request was preferred, and, if the jury believed that such a conversation took place, it was proper to consider it with other testimony in determining the issues involved.

The judgment is reversed, with costs to proponent, and a new trial granted.

Bird, C. J., and Moore, Brooke, and Blair, JJ., concurred.