## ROE *v.* DOE.

*(Supreme Court, General Term, Third Department.* September 25, 1890.)

BREACH OF MARRIAGE PROMISE—EVIDENCE.

In an action for breach of promise of marriage, plaintiff testified to promises by defendant to marry her, made in March, 1888, and subsequently, which defendant denied. There was evidence that, from April to December of the same year, defendant visited frequently at plaintiff's house, his visits becoming less frequent after August; that he went with plaintiff to entertainments; that she rode out with him; and that he gave her a few trifling presents. It also appeared, however, that during all that time they were indulging in illicit sexual intercourse; that defendant, when visiting plaintiff, often remained all night, they spending the night

in a room by themselves; and that, in October of that year and from December to May following, plaintiff wrote to defendant several letters in which she informed him of her pregnancy by him, and asked his advice and assistance to be relieved from it, but did not claim or refer to any promise of marriage by him, and in one of them referred to his intimacy with other girls without claiming any right to his society, although urging him to visit her. *Held*, that the evidence did not justify the jury in finding a promise of marriage, and that a verdict for plaintiff must be set aside as against the weight of evidence.

Appeal from circuit court, Sullivan county.

Action for breach of contract of marriage. From a judgment entered upon a verdict for plaintiff, and from an order denying his motion for a new trial, defendant appeals.

Argued before LEARNED, P. J., and LANDON, J.

*T. F. Bush*, (*Alpheus Potts*, of counsel,) for appellant. *T. A. Read*, for respondent.

LEARNED, P. J. No error of law was committed by the learned justice on the trial of this case. No exception was taken to the charge, and hardly an exception to the rulings. But the verdict of the jury is contrary to evidence, and must be set aside. The action is for breach of contract of marriage. At the time of the alleged contract, the plaintiff was a girl of 19, the defendant 4 years older. There had been illicit connection between the parties for a considerable time, and the important question is whether there ever had been any contract of marriage. It is a case where the sympathy of the jury is likely to be excited, and where they may easily feel disposed to make the defendant pay for the illicit connection without carefully weighing the proof as to the existence of a contract. It is quite natural that a jury may think it right that the defendant should compensate the plaintiff for having yielded to him, even though neither party contemplated marriage. But no right to recover can exist, without proof of the alleged contract, and, as in all cases, it rests with the plaintiff to establish that contract by a preponderance of evidence. The plaintiff testifies to a private conversation between plaintiff and defendant, on Sunday night, in March, 1888, in the bedroom in her house, in which he asked her to marry him. She promised an answer on Wednesday, and then did give an affirmative answer. She testifies to other similar promises on his part. All of this the defendant denies. The parties are equally interested pecuniarily. The plaintiff more interested so far as reputation goes. From April to December, 1888, the parties had illicit intercourse. During a part at least of that time the defendant visited frequently at plaintiff's house; occasionally went with her to entertainments as he had done previously. She rode with him. He gave her a few trifling presents. His visits became less frequent after August, 1888. The plaintiff claims that these evidences of defendant's fondness for her corroborate her story.

Undoubtedly, where the intercourse between a young man and a young woman is pure and moral, such facts as are above stated are evidence tending to show that there exists between them an intention of marriage. These indications of pleasure in the company of each other, and of affection for each other, are often the prelude to marriage, and therefore give some evidence of the expectation of the parties that that will be the result. But the force of such circumstances is greatly weakened when the parties are all the time indulging in illicit sexual intercourse. Such indulgence accounts for the frequent visits, and for the excursions and the going together to places of entertainment, and is abundant reason for presents far more valuable than were proved in this case. There is testimony that a cousin of defendant and the defendant used to come together to visit at plaintiff's house; that when this cousin and defendant were there, in March, 1888, they began to "divide company;" that "the boys would stay there all night;" that plaintiff and defendant would spend the night in a room by themselves. "The boys would stay there

till our folks got up in the morning." "They would stay with us all night as often as twice a week." Testimony like this, taken in connection with the undisputed sexual intercourse of plaintiff and defendant, greatly weakens the force of the alleged corroborating facts. But there are still other matters to be considered. From October, 1888, to May, 1889, the plaintiff wrote defendant some dozen letters which are given in evidence. Five of these are long. There is a good deal of brightness in these letters, showing that the writer is not stupid or ignorant. From the letter of October, it appears that plaintiff had been, or thought she had been, pregnant; that she "read the doctor book, got the stuff and took it, and saved you [defendant] from worrying and thinking anything about it." She urges defendant to come and see her, and says: "Are you afraid I have got any disease? Is that the reason you won't come? I ain't been with anybody but you, and you know it."

The defendant testifies that she thinks she became pregnant December 6, 1888. This was the second time. On the 14th of that month she writes a long letter to defendant, urging him to come and see her, and stating that he said she had a disease, and denying this. Another letter in the same month is similar in character, telling him also, in substance, that she fears she is pregnant, but, if so, she will get something and not bring him out. Letters of January and of February are to the same effect, indicating the progress of pregnancy, and the plaintiff's desire to be relieved from it, and asking defendant to come and see her. In the letter she says: "I ain't had no racket since I was with you. I got that way awful easy, but we both lay there almost asleep." "I ain't doing this to keep you from going with anybody else." It is not difficult to understand the meaning of these sentences. It is incredible that she should have written thus to a man whom she was engaged to marry. A letter of March urges defendant to come, and says she "will get out of the trouble without bringing you out if I can." A letter of April says, "I have got to do something or have the kid in August." "I never asked you to marry me or won't." "You made me think you did [care for me] until you got me in trouble, and now you don't care." Another extract from a May letter is: "You write and tell me what I had better do. You know what is up with me, and I went to Middletown, and was examined. I am in trouble, and the doctor won't operate until you say so." From one end to the other of these letters there is not a word and not a hint that the defendant had ever promised to marry the plaintiff. It is incredible that a girl, knowing that she was pregnant, and claiming that the defendant was the cause, asking his assistance and advice, should never have hinted at his promise of marriage, if such promise had been made. All these letters are such as would be written by a girl to one who had caused her pregnancy under no promise whatever. If there had been any contract of marriage, she would unquestionably have maintained it. She would have based upon it the most urgent appeal that he should now fulfill the promise under which she had submitted to him. Instead of that, she refers to defendant's intimacy with other girls, saying in one letter that he had stayed with one girl three times through the week, and that "you must use her better than you have me." That is not the language of a girl to an affianced lover. She does not pretend to any claim, as a right, to defendant's society and attention. Only she asks him to continue his visits, since she had permitted him such favors. We cannot read these letters, from which we have given but a few extracts, without seeing clearly in them a complete refutation under the plaintiff's own hand of the claim set up in this action. The rest of the letters are of the same character with these extracts, so far as they show the nature of the intercourse between the parties.

We have nothing to say in justification of what the defendant has done. How great the wrong was to the plaintiff we do not know. Whether she was virtuous up to the time of her acquaintance with him it is not for us to de-

termine. In the case of such illicit connection, the shame and mortification always fall on the woman, and the man goes free, unless there was a promise of marriage. And the only question before us is whether the jury were justified in finding such promise. For the reasons which are above outlined we are satisfied that the evidence did not support the verdict, and that the verdict was contrary to the weight of evidence. The judgment and order must be reversed, and a new trial granted, upon the payment by the defendant to the plaintiff of the cost and disbursements of the trial, and of the costs and disbursements of the appeal.