## DUFF v. JUDSON.

1. BREACH OF MARRIAGE PROMISE—EVIDENCE.

    That the testimony for the plaintiff, in an action for breach of promise of marriage, tends to establish a contract and its breach, is concluded by a former judgment between the same parties. *Judson* v. *Judson*, 147 Mich. 518 (111 N. W. 78).

2. SAME—EVIDENCE—ADMISSIONS.

    It is competent to show, in behalf of the plaintiff who claims that she cohabited with the defendant in reliance on his promise of marriage, that defendant treated her and two children adopted by her as members of his family.

3. SAME—DAMAGES—CONSEQUENTIAL INJURIES.

    As against the defendant, who was a physician and had notice of the probable effect on plaintiff of his refusal to support her or perform his agreement, damages are recoverable for the loss of plaintiff's arm caused by its use in performing labor while affected by an ulcer, as a natural result of the breach of marriage promise.

4. SAME—COMPROMISE—INSTRUCTIONS TO JURY.

    No error prejudicial to the defendant is committed where the judge instructed the jury concerning a claimed compromise, that while the Supreme Court or the trial court on a previous trial did not consider the settlement a bar to the suit, a settlement upon a full understanding would operate as a complete defense.

5. APPEAL AND ERROR—RECORD—INDEX.
   Assignments of errors not based on exceptions, or founded on exceptions not indexed or referred to by page, as required by Supreme Court Rule 36, will not be considered on error.

6. SAME—ASSIGNMENTS OF ERROR—SPECIFIC CHARACTER.
   A general assignment of error, based on several requests to charge and the instructions to the jury as a whole, is too broad.

Error to Wayne; Donovan, J. Submitted February 8, 1910. (Docket No. 121.) Decided March 19, 1910.

Assumpsit by Mary J. Duff against Henry C. Judson for breach of promise of marriage. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*George X. M. Collier,* for appellant.

*Philip A. McHugh* and *William Henry Gallagher,* for appellee.

BLAIR, J. This is an action to recover damages for an alleged breach of promise of marriage and seduction accomplished thereby. The plaintiff recovered a verdict and judgment for $1,250, and defendant has brought the record to this court for review upon writ of error.

According to the statement in the brief for defendant and appellant the questions for consideration are:

(1) Whether the facts set forth in the said record by the plaintiff and defendant constitute a legal contract of a promise to marry, and a breach thereof.

(2) Whether the testimony supporting the common-law marriage was admissible, and did tend to prove a promise of marriage and a breach thereof.

The plaintiff testified to a promise of marriage by defendant, its acceptance by her, and to the postponement of the fulfillment of his promise by defendant from time to time with renewed promises of marriage, until he finally refused some years after their engagement, to keep his

agreement. In support of her cause of action, plaintiff put in evidence tending to show that defendant treated her as his wife and so held her out to those to whom he had any occasion to speak of her. The defendant denied any promise of marriage at any time, or that he ever treated plaintiff as his wife or so held her out, but insisted that they lived together in lewd and lascivious cohabitation. We regard both of the questions above stated as having been settled in favor of plaintiff by the opinion of this court in the prior case between the same parties. See *Judson* v. *Judson*, 147 Mich. 518 (111 N. W. 78). In that case it was said:

"This testimony establishes a promise of marriage, a breach of that promise, and seduction; but it does not establish a marriage."

We find no such change in the relations of the parties, as disclosed by the testimony in this record, as to require a reconsideration of the legal effect thereof. The conflicting testimony was for the jury and not for the court.

Notwithstanding his statement of the questions for consideration, defendant's counsel presents numerous other questions in discussing the assignments of error. It is contended that it was error to admit testimony as to defendant's conduct and statements in holding the plaintiff out as his wife, and relative to two children legally adopted by her, and not by him. The testimony was limited by the court to acts and declarations of defendant himself or in his presence, and was unobjectionable. The plaintiff claimed that she was cohabiting with defendant, relying in good faith upon a continuing promise of marriage. The defendant claimed that she was living with him as his concubine. Under such circumstances, his conduct towards her, his statements as to their relations, his treatment of her adopted children as his own, and causing one of them to be baptized in his own name, were properly received in evidence to enable the jury to ascertain the true relation between the parties and the effect upon plaintiff of the termination of such relation. *Simmons* v. *Sim-*

*mons*, 8 Mich. 318; *Rutter* v. *Collins*, 96 Mich. 510 (56 N. W. 93).

Defendant also contends that the court erred in admitting testimony as to injuries suffered by plaintiff through burning and in consequence thereof the loss of her arm. The testimony discloses that plaintiff was horribly burned, necessitating some seven operations, and finally causing a cancerous growth, which compelled the amputation of her arm at the shoulder joint. She testified that defendant—

"Would not let me go to the hospital. He insisted on keeping me home, and he was very kind to me. * * * Dr. Judson was very kind to me, and he came to my room one day, and he said, 'Minnie, don't give up.' And when he saw I was going to recover, he came to me one day and said, 'Just as soon as you are able to leave the house, we will be married.' He came to my room one evening all alone and impressed these words upon me.

"Dr. Tibbals performed an operation on my arm a year ago last September, where a cancer had set in from an exposure, and in the work I had had to do since the doctor put me out of the house. Since that time I have made my living in every way, doing washing and sewing, and now I am keeping a little store. I have cared for the children the last five years, and have had no assistance from the doctor. * * *

"Dr. Judson told me since I got burned my looks chilled him. I was not able to fix up and look like other women did. That was in April before we separated, the same year, 1903."

Dr. Tibbals testified:

"Of course, the original burn was the primary cause. A burn which is deep is always followed by scar tissue, and scar tissue is unhealthy, for it is a tissue of low vitality, and it is liable to undergo degenerative changes in later life. Now, the continued irritation at that point, plus the unhealthy tissues from the original burn, was the cause of the development of the cancer at that point. I think it might have been prevented possibly at that point, but we cannot be certain of these things; and, in addition to that, is the fact which has already been alluded to, that on account of the necessity of caring for Judson's children it was impossible to give that arm the rest which was necessary in order to secure the healing of the ulcer."

The court said nothing in his charge to the jury relative to these injuries as affecting the plaintiff's damages, and defendant presented no request to charge upon the subject. In view of the amount of the verdict, it is not probable that any compensation therefor was included in their estimate of the damages, since any adequate award for such injuries would have been far in excess of the total amount of the verdict. We think, however, that if the jury found, as they might from the testimony, that the defendant violated his agreement, with reasonable grounds for believing, as a physician and surgeon, that as a result thereof the plaintiff would be compelled to perform manual labor to support herself and the children, which might interfere with the healing of the ulcer in her arm and eventually necessitate its amputation, he might be held responsible in damages for such loss. According to the plaintiff's testimony, defendant, instead of marrying her as soon as she got out of the hospital after the first operation to restore the use of her arm, cast her off as no longer fit to minister to his lust, and we see no valid reason why he should not be held responsible for the results which naturally followed and which might reasonably have been anticipated by a medical man.

We do not think there was prejudicial error, if any at all, in the preliminary remark of the trial judge, relative to the claimed settlement, that:

"While the higher court and Judge Hosmer seem to have passed by the settlement, in any event they did not consider it a bar to the suit, but if they did settle and settle understanding in full and knew all about it, each of them, without any fraud or deceit, I would charge you that would be the end of the suit."

Considering the entire sentence, the jury would naturally understand that the reference to the prior decisions was intended to mean that the question of the effect of the settlement had not been determined, but remained an open question for their determination.

Several of the assignments of error discussed in the

brief are not based upon exceptions, and as to several others there is no reference, in the index or the assignments of error, to the page of the record where the exceptions appear, as required by Supreme Court Rule 36; we have therefore not considered such assignments.

The 16th assignment of error is as follows:

"Further, the court erred in refusing to grant the requests to charge of the defendant numbered 1, 2, 3, 4, 5, and 6, and more especially the entire charge as being prejudicial to the defendant, in that the court did not make it clear upon the question that there was no liability on the part of the defendant to support the children in question, or to be liable in any manner for the unhappy physical condition of the plaintiff arising from the injuries of the burning, loss of her arm and the mutilation of her body, leaving these questions open for the jury to give damages to the plaintiff out of sympathy for the physical condition of the plaintiff and the loss that she claimed to have suffered."

The discussion of the 16th assignment in defendant's brief is as follows:

"We respectfully submit that it becomes the duty of the trial court to grant the requests of the defendant to charge, if they contain the correct ruling of law appertaining to the case, and there is no legal objection to the said requests, and the defendant should have been given the benefit of such requests, either in modified form or in the charge as a whole covering the points of law arising in the case, but in this case the court refused to give the defendant's requests to charge the jury Nos. 1, 2, 3, 4, 5, and 6 as a whole or in any modified form, and the refusal to give the same was disastrous and prejudicial to the interest of the defendant in this case."

This assignment is too general, and the only aid afforded by the discussion in the brief is in eliminating everything except the alleged failure to give defendant's requests. Our attention is not directed to any specific instance in which the court failed to give the substance of any particular request, but we are left to examine the requests in connection with the charge to ascertain wherein

the court committed error. Such examination discloses that the substance of the requests, so far as proper, was given.

The judgment is affirmed.

MONTGOMERY, C. J., and MCALVAY, BROOKE, and STONE, JJ., concurred.