JASKOLSKI *v.* MORAWSKI.

1. CONTRACTS—BREACH OF PROMISE—ILLEGAL CONSIDERATION.
    On the trial of an action for breach of promise of marriage, which defendant claimed was void, if the facts were as the plaintiff claimed, because her evidence showed an immoral consideration, the court did not err to the prejudice of defendant in charging the jury that if the promise rested solely on her submitting to illicit relations, the promise was void, leaving the disputed issue whether the promise was made prior to the acts shown, to the determination of the jury.

2. SAME—BREACH OF PROMISE OF MARRIAGE—SEDUCTION.
    Although the trial court correctly held that plaintiff could not recover on a count for seduction, being the second count of her declaration, because she had not been virtuous theretofore, the jury were rightly permitted to consider the fact of illicit relations in a verdict based on plaintiff's first count, for breach of a promise of marriage.

3. COMPROMISE AND SETTLEMENT—EFFECT—DAMAGES.
    And where the court committed error in his charge by allowing the jury to include in the damages matters that preceded an admitted settlement between the parties, a reduction of the damages from $3,500 to $1,500 did not cure the erroneous instruction, in a breach of promise case.

Error to Wayne; Van Zile, J. Submitted April 18, 1913. (Docket No. 94.) Decided January 5, 1914.

Case by Franciska Jaskolski against Theophile Morawski for breach of a promise of marriage accompanied by seduction. Judgment for plaintiff. Defendant brings error. Reversed.

*Percy W. Grose,* for appellant.

*W. C. Gottman* and *Jonas B. Houck,* for appellee.

MOORE, J. Plaintiff commenced this action against

the defendant for damages for breach of promise to marry and seduction. There are two counts in the declaration. In the first count she alleges that the promise to marry was made on the 5th day of January, 1910, and on divers other occasions previous thereto, and that, relying on said promise, plaintiff had illicit connection with defendant. The second count is that on the 5th of January, 1910—

"And on divers other days and times between said date and the time of the commencement of this suit (January 5, 1911), at the home of the defendant, the said defendant seduced, debauched, and carnally knew the said Franciska Jaskolski."

To this declaration defendant pleaded the general issue, and gave notice of the statute of limitations. Defendant denied the promise of marriage, and claimed that the promise sued upon was void, because based on a consideration that was immoral and against public policy. He also denied that he had seduced plaintiff. The court directed a verdict for defendant as to the second count in the declaration, but permitted the case to go to the jury upon the first count, upon which count plaintiff recovered a verdict of $3,500. On a motion for a new trial this amount was reduced to $1,500, and it is from a judgment for that amount that the case is brought here by writ of error.

The case is a very peculiar one. The plaintiff at the time of the trial was 28 years old. She does not speak English readily. She has never been married. She is the mother of three children, one of them born in 1903, one in 1906, and one in 1910. She claims that the defendant is the father of the first and third of these children, and that his brother, who was associated with him in business, is the father of the other child.

The defendant denies that he ever promised to marry plaintiff or that he ever had connection with

her, though he testified that to avoid a scandal that might injure his business he paid her $150, and received the following paper:

"This agreement entered into between Francis Jaskulska, of the city of Detroit, county of Wayne and State of Michigan, party of the first part, and Theofil Morawski of the same place, party of the second part. Witnesseth: Whereas the said Francis Jaskulska was on the 16th day of November, 1903, delivered of a male child, of which she claims Theofil Morawski to be the father thereof, and whereas said Francis Jaskulska together with her parents desire to keep and raise said child. Therefore it is hereby signed by the parties hereto that upon the payment of the sum of one hundred and fifty dollars by the said Theofil Morawski to said Francis Jaskulska the receipt of which is hereby acknowledged, the said Theofil Morawski is released from all further liability or claims against him by said Francis Jaskulska for the keeping and maintenance of said child or any other damages arising out of said matter.

"FRANCISKA JASKULSKA.

"Subscribed to and acknowledged before me this 13th day of January, 1904.

"FELIX A. LEMKIE, Notary Public.

"My commission expires, Feb. 16th, 1907.

"Ratified by the county superintendent of the Poor Jan. 20/04.

"P. H. DIOGER, Secy."

The plaintiff lived with her people next door to a bakery owned by the defendant and his brother. When she was 18 years old she entered into their employ. It is her claim that defendant, who was a widower much her senior, began to pay attention to her and proposed marriage, and that she accepted him; that relying upon this engagement she submitted her person to him many times; that as a result a child was born; that these relations were discontinued for a time when she entered into like relations with his brother with like result; that still later the defendant again proposed marriage, followed by

illicit relations, and the third child was born, and that, defendant refusing to carry out his promise, this suit was brought.

The plaintiff in giving her testimony was very stupid, or else very reckless or possibly both. She testified in the most positive terms to a proposal of marriage and its acceptance, and a reliance thereon, followed by illicit relations. The following is a specimen of her testimony:

"*Q.* When you were working at the Oriental Hotel, did you see Morawski often?

"*A.* Yes, sir.

"*Q.* Where did you see him?

"*A.* Over to his place.

"*Q.* Where did you meet Morawski?

"*A.* I didn't meet Morawski no place. I would see him in his place and at my place. I went under the name of Schultz because they couldn't write my name. I have never been married. I have never worked since I left the Oriental. I had intercourse with Morawski the second year. I don't know what year that was. I was working for him at that time. That is, during the first time I worked for him. I had intercourse with him two or three times a week. I had intercourse with him because he promised to marry me.

"*Q.* Well, now, when he made this promise to marry you, what did he say the first time?

"*A.* Well, always wanted me; I am going to have a good home and support my folks, and give my folks a good home, too.

"*Q.* Is that before or after the intercourse? Was that before or after you had anything to do with him?

"*A.* That was before and afterwards, too.

"*Q.* What he told you was, if you would have intercourse with him, he would marry you, wasn't it?

"*A.* Yes, sir.

"*Q.* That is all he said, wasn't it?

"*A.* Yes, sir.

"*Q.* What?

"*A.* Yes, sir.

"*Q.* Then he told you afterwards he would marry you in case you had a child?

"*A.* Yes, sir.

"*Q.* That is all the promise he has ever made you, isn't it?

"*A.* Yes, sir.

"*Q.* What?

"*A.* Yes, sir.

"*Q.* If you would have intercourse with him, in case you had a child he would marry you?

"*A.* Yes, sir.

"*Q.* That is your claim now, and it has always been your claim, hasn't it?

"*A.* Yes, sir,

"*Q.* That is the only promise he ever made you?

"*A.* Yes, sir.

"*Q.* That is what you are standing on now, is that promise?

"*A.* Yes, sir.

"*Q.* And no other promise?

"*A.* No, sir."

She attempts to excuse these inconsistencies by saying she did not understand.

A large part of the brief of the appellant is devoted to the proposition that the promise of marriage was void because the consideration is immoral. Counsel cite authorities which he claims sustain his contention. We have examined them, but we do not deem it necessary to decide whether he is right in his contention, for the trial judge held with him, and instructed the jury:

"Now it is claimed by the defendant that the promise of marriage, if there was any such promise, was not one resting upon mutual promises for its consideration. That is, the consideration of the contract was not one resting on mutual promises. But it is the theory of counsel for the defendant that if there was any such promise, and it is claimed there was not, of course, that it was as is shown by the proof according to his theory, in consideration of defendant having and of plaintiff's submitting to sexual intercourse. That is to say, it is the theory of the defendant that the contract or the understanding or engagement here was one resting upon an immoral consid-

eration, namely, the consideration that this woman would permit herself to have sexual intercourse with this man; that it was an immoral and void consideration. On the other hand, the plaintiff claims that there was a promise or an understanding of marriage prior to the sexual relations. Now should you find the fact to be that the defendant promised plaintiff solely upon the consideration that she should permit him to have sexual intercourse with her, or solely on the consideration that she should have sexual intercourse with him, and if she became pregnant and had a child he would marry her, and that there was no other consideration or promise, then and in such case I instruct you that the promise to marry rests upon an immoral consideration and is void, and your verdict should be for the defendant. That is, if you find in this case that the only consideration for the promise, if there is any promise in the case, of marriage, was a promise that if she would submit herself to have sexual intercourse with him he would marry her in case she became pregnant, if you find that that was the only consideration, the only arrangement or contract, then I instruct you that that is a contract resting upon an immoral consideration and is void, and the plaintiff could not recover. Should you find, however, that these parties did indulge in sexual intercourse, but should find the facts to be that the proposal of marriage was made by the defendant and accepted by the plaintiff, and that after this, because of such engagement, the defendant induced the plaintiff to have sexual intercourse with him, then I instruct you that this would not justify the defendant in refusing to consummate such marriage, and it would be no justification for him to break the contract. In other words, if you find that the promise was resting solely upon her submitting herself to sexual intercourse, then it is void."

Under all of the authorities the defendant has no reason to complain of this portion of the charge.

In passing upon a similar case to this one the following language was used:

"The plaintiff's expressions are somewhat confused and indefinite. At one point in her testimony she

says: 'He said if I would yield to him he would marry me. It was on the 10th or 11th of February he first said this, but I did not then yield. He worried me until about the last of February, and I yielded to him.' And again she says: 'I would not have yielded to him if he had not vowed firmly he would marry me, and gave me his hand on it, and he said if anything happened he would marry me at once.' Again she says: 'I would not have yielded to him if I had not loved him and he had not promised to marry me.'

"The defendant denies that he ever made her any promise of marriage at any time, but does not deny the sexual intercourse. We think, taking all of the statements together, and especially in view of the other evidence in the record, that the proper construction of her statements is that she would not have yielded to him but for the previous promise to marry her at some time, and for his assurance that if anything happened to her prejudice he would marry her at once. This does not mean that the illicit intercourse was the consideration for the promise, but that the contract was made the basis for obtaining this intercourse, and as a result of the promise she agreed to the intercourse." *Spellings* v. *Parks,* 104 Tenn. 354 (58 S. W. 127).

Counsel claim the court erred. We quote from the brief:

"In admitting testimony tending to show the conduct of the parties during the entire time of their acquaintance; such testimony being offered and admitted as tending to prove various promises of marriage and in aggravation of damages. * * * The court under the declaration admitted testimony of many acts of sexual intercourse. Under the judgment of the trial court that there was no seduction, which judgment is now final, the testimony was immaterial and incompetent: *First,* because the testimony of mere acts of intercourse has no tendency to prove a promise of marriage; *second,* the law does not permit testimony of acts of intercourse to be offered on the question of damages, unless such acts amount to seduction."

Counsel also complain of the following portions of the charge:

"You are to take all that you have been shown with reference to the relations of these parties which tends to prove this understanding, and you are to determine was there at any time between these two parties an understanding by both of them that they were to be married. * * * Now, in that regard, of course, you are to take into consideration all the proofs and all the circumstances, and in arriving at your verdict and in determining whether or not a contract of marriage was made between the parties, as I have said, you are to take into consideration the conduct of each of them. Now, further considering the matter of breach of promise, if you find from the evidence in this case that a mutual promise and engagement was entered into between the plaintiff and the defendant on or about the 5th day of January or before that time, and the promise or engagement was kept alive and continued to be in existence and as a subsisting valid mutual promise by being repeated from time to time, or otherwise, up to the said 5th day of January, 1910, and that because of said pre-existing promise of marriage the defendant induced and procured the plaintiff to submit to sexual intercourse with him, whereby she became pregnant and bore a child some time on or about October 5, 1910, then in determining the amount of damages if you should find for the plaintiff, you may take these facts into consideration, together with the pain and anguish of body and mind which she may be shown by the proofs in the case to have suffered, together with all the other facts and circumstances that have been proved in relation to that engagement."

We quote from the brief:

"This part of the charge is not only objectionable because it permits the jury to consider the matters which were inadmissible in evidence, and should not be considered as bearing upon the questions involved, but is open to a more serious objection in this: The trial court held there was no evidence of seduction in the case, and there could be no recovery of damages because of any claimed seduction, but in this part of

the charge, notwithstanding such ruling, he instructed the jury to consider matters which amount to seduction.

"In other words, after having directed a verdict for the defendant on the count in the declaration alleging seduction, and judgment having been rendered on the same, the court instructed the jury to allow damages for such seduction. No other construction can be placed upon this language:.

" 'And that, because of said pre-existing promise of marriage, the defendant induced and procured the plaintiff to submit to sexual intercourse with him, whereby she became pregnant, and bore a child some time on or about October 5, 1910, then in determining the amount of damages, if you should find for the plaintiff, you may take these facts into consideration, together with the pain and anguish of body and mind which she may be shown by the proofs in the case to have suffered, together with all the other facts and circumstances that have been proven in relation to that engagement.'

"If this charge does not allow a recovery for seduction, it will at least be admitted that it allows recovery for acts of intercourse and damages because of the birth of the child. This is then subject to the further objection that, so far as the intercourse previous to the birth of the first child and the birth of the first child is concerned, plaintiff had already received compensation, and had released the defendant from any claim for damages, and further it allows her to recover for damages sustained by reason of acts of sexual intercourse and the birth of the child."

At the outset we think it may be said that counsel is mistaken as to the effect of the court having directed a verdict in favor of defendant on the second count, which count was the usual averment of seduction, stated to be on January 5, 1910, "and on divers other days and times between said date and the time of the commencement of this suit." It is evident from the record that the trial judge was satisfied that on January 5, 1910, and from then on until the commencement of this suit plaintiff was not a chaste woman, and therefore there could not be a

recovery under the second count, but this did not preclude the jury from taking into consideration the fact of illicit relations charged in the first count, if they found there was a promise of marriage, as averred therein.

Counsel cite authorities in support of the proposition that the jury should not have been allowed to take the fact of seduction into consideration in fixing the amount of damages. These authorities are distinguishable from the instant case. In *Boyer* v. *Sherer*, 28 Ill. App. 545, the court was of the opinion that the evidence given did not amount to a promise of marriage, and because of that reversed the case. For the same reason the case of *Roe* v. *Doe*, 11 N. Y. Supp. 236, was reversed. For the same reason the judgment was affirmed in *Bleiler* v. *Koons*, 132 Pa. 401 (19 Atl. 140). The case of *Commonwealth* v. *Walton*, 2 Brewst. (Pa.) 487, was a criminal case for seduction. In the case of *Felger* v. *Etzell*, 75 Ind. 417, the headnote as to this feature of the case is as follows:

"On trial of an action for breach of a promise to marry, where the complaint contained no allegations of illicit intercourse between the parties, and no answer was filed, evidence of such illicit intercourse was inadmissible to prove a promise to marry, or enhance the damages, or for any other purpose."

Certainly a very different case from the one before us. In *Judson* v. *Judson*, 147 Mich. 518 (111 N. W. 78), Justice Carpenter, speaking for the court, stated what testimony established a promise of marriage, a breach thereof and seduction. In *Duff* v. *Judson*, 160 Mich. 386 (125 N. W. 371), reference is made to that case with approval.

It is argued that the charge was erroneous because the defendant had settled for the intercourse resulting in the birth of the first child, and been released

from any liability therefor. Special complaint is made of that portion of the charge reading:

"You are to take all that you have been shown with reference to the relations of these parties which tend to prove this understanding, and you are to determine was there at any time between these two parties an understanding by both of them that they were to be married."

It is evident the judge thought he had erred in the charge, and attempted to cure the effect of the error by reducing the verdict from $3,500 to $1,500. It is possible the jury might have returned this amount if they had been properly instructed as to the law, but we are unable to say this is so. The jury should have been instructed there could be no recovery for what occurred before the settlement between the parties. Nor for anything except for what followed the promise of marriage of January 5, 1910, or a time approximate to that date.

The judgment is reversed, and a new trial granted.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.