SCHELOSKI v. SCHRICKER.

1. EVIDENCE—ADMISSIONS AGAINST INTEREST—PRESUMPTIONS.

The admissions of a party against his interest are admissible against him, and are presumed to be true until the contrary is shown.

2. SAME—ADMISSIONS OF SOLE BENEFICIARY AGAINST INTEREST ADMISSIBLE.

Admissions of a sole devisee, legatee, or other beneficiary of a transaction are admissible against him, but where there is more than one devisee, legatee, or beneficiary, the admissions of one of them are not admissible, on the ground that another should not be prejudiced by such statements.

3. CANCELLATION OF INSTRUMENTS—DEEDS—MENTAL INCOMPETENCY —ADMISSIONS—FRAUD.

In a suit to set aside certain conveyances from a wife, since deceased, to her second husband, evidence that the wife was mentally incompetent at the time the deeds were executed, together with admissions by defendant, the sole beneficiary, that he had fooled his wife and obtained a deed of the property when she thought she was making a will, *held*, sufficient to justify setting aside the transactions involved.

Appeal from Wayne; Webster (Arthur), J. Submitted October 17, 1928. (Docket No. 71, Calendar No. 33,974.) Decided January 7, 1929. Rehearing denied March 29, 1929.

Bill by Barney Scheloski and another against John Schricker and another to set aside certain deeds and for an injunction. From a decree for plaintiffs, defendant Schricker appeals. Affirmed.

*Payne & Payne,* for plaintiffs.

*Ellery C. Pengra* and *George H. Kretzschmar,* for appellant.

Potter, J. Plaintiff, one of seven living children, by the first husband, of Clara Schricker, deceased, December 18, 1926, filed the bill of complaint herein against John Schricker to set aside certain conveyances by which at her death he became the record title holder of the real estate possessed by Clara Schricker in her lifetime, and to restrain the Peninsular State Bank from disposing of the money which had been hers, and to secure it to her estate. On the hearing the Union Trust Company, administrator of Clara Schricker's estate, was made party plaintiff. There was decree for plaintiff and defendant appeals. The bill of complaint alleges that Mrs. Schricker was not mentally competent to transact business, and that her husband, John Schricker, the defendant, by undue influence, contrived and succeeded in having her transfer the real estate and change her bank account for the purpose of defrauding plaintiff and his brothers and sisters.

At the time of the transactions in dispute, deceased was 61 years of age. She had been married when a young woman and borne several children, seven of whom survived her. Defendant John Schricker had been an improvident blacksmith, who, up to his marriage to Mrs. Schricker in 1912, had accumulated no money or property. Mrs. Schricker had considerable property at the time of her second marriage, which she had obtained on her first husband's death. Defendant was a drinking man, maintained a still in the cellar, engaged in the manufacture of whisky, and kept a considerable supply on hand. Both defendant Schricker and his wife were frequently intoxicated. Up to the fall of 1926 Mrs. Schricker had been on good terms with her children. She had frequently stated her husband had brought her no property and would not, at her death, share in her estate. During the summer and

fall of 1926 she was sick; was admitted to the Ford hospital in September, 1926, and assigned to the *neuro-psychiatric* division, coming under the supervision of Dr. Heldt, a graduate of Johns Hopkins Medical College, with wide experience in mental diseases and lecturer thereon at the University of Missouri. She was, when brought to the hospital, suffering from arteriosclerosis, cirrhosis of the liver, due to chronic alcoholism; was mentally disturbed; suffered from delusions of persecution; thought someone was attempting to poison her; did not know where she was; did not always recognize her physician; berated the nurses and doctors; declared she had been drinking poison intended for her husband; said she saw strange bugs where there were none on her clothing; attempted to pick them off her stockings; and claimed there were millions of gold fishes in the yard where there were none. The Wasserman test revealed no evidence of syphilis, but disclosed changes in the brain tissue. Dr. Heldt said she was insane at the time, and, by reason of her being insane, recommended that she be committed to an insane asylum for further treatment; there being no prospect of her getting better; the disease being progressive in its nature. She did not get better. Her husband frequently complained of her treatment of him during the summer and fall of 1926, said she was crazy and should be sent to an insane asylum, that the devil himself could not live with her. She locked herself in the house, locked him out of the house, refused to get his meals, and refused to give him money. While she was in the Ford hospital, and on October 19, 1926, defendant Schricker filed a petition in the probate court of Wayne county alleging she was insane and asking that she be admitted to the insane asylum at Pontiac, or Eloise, or some other suitable place. Her children

did not want her taken to an insane asylum. They thought she should be taken care of in her own home, and the petition was dismissed and the old lady taken back home. She was admitted to Providence hospital, and left there November 9, 1926.

During all this period she was feeble, continued to suffer from delusions, complained of being bewitched, had fatty degeneration of the heart, jaundice, and dropsy, and was tapped at least three times to remove the liquid accumulating in the abdomen. She picked up pins, salt, towels, pieces of bread and other things, and, when he was present, put them in her husband's pocket. She failed to recognize old acquaintances, continued to complain of being poisoned, of suffering for others, held imaginary conversations; talked to herself, and appeared silly. She was rambling and incoherent, appeared mentally irresponsible, did not know what she was doing, was confined to her bed, and stimulated with morphine. She was mentally very low, and gradually sank in bodily and mental strength until December 11, 1926, when she died.

After she came from the Ford hospital, and before the transaction complained of, defendant John Schricker told many persons his wife had made a will giving the property to the children, and that he would get none of her property. The deeds are dated October 30, 1926. They purport to have been acknowledged on that date. They were signed and acknowledged 10 or 15 days later. Defendant Schricker desired to get the property. He approached a Mr. Perry, an attorney-at-law, and asked him to participate in fraudulently procuring a deed to himself of his wife's property. After the defendant Schricker procured the deed and transfer of the money, he continued to indulge his appetite for intoxicating liquors; told the children he had fooled

his wife and obtained a deed of the property when she thought she was making a will; said she would kill him if she knew what he had done; promised one of the heirs to give her the house if she would stand by him and help him get the property.

The admissions of the defendant John Schricker, voluntarily made, against his interest, none of which were denied by him, are admissible against him as primary evidence. They are presumed to be true until the contrary is shown. *Merrill* v. *Leisenring,* 166 Mich. 219. In this case he is the sole beneficiary of the transactions attacked. The rule is well settled that the admissions of a sole devisee, legatee, or other beneficiary of a transaction are admissible against him, but where there is more than one devisee, legatee, or beneficiary, the admissions of one of them are not admissible, on the ground that another should not be prejudiced by such statements. *In re Lambie's Estate,* 97 Mich. 49; *O'Connor* v. *Madison,* 98 Mich. 183; *In re Lefevre's Estate,* 102 Mich. 168; *Roberts* v. *Bidwell,* 136 Mich. 191; *Bean* v. *Bean,* 144 Mich. 599; *In re Hewitt's Estate,* 161 Mich. 536 (21 Ann. Cas. 47); *In re McMaster's Estate,* 163 Mich. 210; *In re Ganun's Estate,* 174 Mich. 286. The trial court who saw the witnesses had no hesitation in setting aside the transactions involved.

We think the learned circuit judge arrived at the correct conclusion, and the decree of the trial court is affirmed, with costs.

NORTH, C. J., and FEAD, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.